# SUSAN MIDDLEKAUFF *against* MICHAEL P. SMITH.

Testimony in regard to the want of repairs, which a party covenanted to make, is not to be admitted, unless it is shown to relate to the time during which the covenantee was to keep the property in repair.

What is meant, in the case, by keeping the mill in repair?

The office of a videlicet.

An agent without a release, is not a competent witness for his principal; although the record in the case is not evidence against the agent, in a suit by his principal against him, to prove his misconduct, yet it is evidence of the amount of damages recovered against the employers.

Rule by which jurors are to be governed in assessing damages.

42     v. 1

This case, brought by an appeal from Washington county court, is an action of covenant, instituted there by the appellant against the appellee.

The declaration recited, that by certain articles of agreement, made and entered into the 27th day of January 1846, sealed with the seals of the plaintiff and defendant, and profert made of them, the said Susan Middlekauff rented and leased, and by these presents, did rent and lease to the said Michael P. Smith, her mill property and forty acres of land, being part of the same known as Poplar Grove, from the 1st of April 1846, for one year, with the privilege of two, if the property was not sold in the mean time; the lease was to be for two years, the said Susan Middlekauff was to keep the mill in good repair. The said Michael P. Smith, on his part, agreed to pay the said Susan Middlekauff, the sum of $550, as a year's rent for the said property; and the said Michael P. Smith further agreed to underpin, chink and daub the warehouse, and also to remove a log tenant house from the upper farm, known as "Charlton's Forest," and put the same where Samuel Middlekauff might direct, removing the said house free of charge, and put the house up in a plain and substantial manner, keeping a correct account of expenses of the same, for which he was to be paid, after deducting twenty-five dollars rent of the same whilst in his possession, and also to keep the dam in good repair at his own expense; the said Michael P. Smith was to be as economical in the use of firewood as circumstances would admit; cutting dead and decayed timber under all circumstances. The plaintiff entered upon the premises, and was possessed thereof for the term of two years, by virtue of said articles of agreement. And although the said plaintiff hath always since the time of making said articles of agreement, hitherto, well and truly performed, and kept all things in the said articles of agreement contained, on his part and behalf, according to the tenor and effect, true intent and meaning of the said articles of agreement, to wit, at Washington county aforesaid, yet protesting, that the said defendant hath not performed, fulfilled or kept, according to

the tenor and effect, true intent and meaning thereof, any thing in the said articles of agreement contained, on her part and behalf. And the said plaintiff further says, that after the said 1st day of April in the year 1846, and during the continuance of the said term of two years, to wit, on the 1st day of April in the year 1847, the said mill, in the said articles of agreement mentioned, became and was in bad repair, for the want of needful and necessary reparation and amendments of the same, in the roof, and in divers parts of the machinery thereof, and for the want of cleaning out of the tail-race of said mill, &c.; of all which said matters and things, due and proper notice was given by the said plaintiff to the said defendant, to wit, at the county aforesaid; yet the said defendant did not repair or amend the roof of the said mill and the machinery thereof, and have the tail-race of the said mill cleaned out, &c.; by reason whereof, the said plaintiff is damnified, and lost the use of said mill for a long time, and for a long time could not do near as much grinding with the said mill, as if the same had been kept in good repair; and also had damaged and lost a large quantity of wheat, and was compelled to decline the purchase of other large quantities of the same, and was otherwise damnified and injured; but on the contrary, the said defendant suffered and permitted the said mill to continue so ruinous, and in bad repair, from the said 1st day of April in the year 1847, until the expiration of the said term of two years, to wit, at the county aforesaid, contrary to the form and effect of the said articles of agreement, and of the covenants of the said defendant, in that behalf made as aforesaid. And so the said plaintiff in fact says, that the said defendant, (although often requested so to do,) hath not kept the covenants so by her made as aforesaid, but hath broken the same, and to keep the same with the said plaintiff, hath hitherto wholly neglected and refused; and still doth neglect and refuse, whereby the said plaintiff saith, that he hath damage, and is the worse to the value of two thousand dollars, and thereupon he brings suit, &c.

Pleas. The defendant fulfilled and performed the cove-

nants in said articles of agreement on her part to be performed. And 2nd, and for a further plea in this behalf, as to the said supposed breach of covenant in suffering said mill, in said articles of agreement mentioned, to become and be in bad repair from the first day of April, in the year 1847, until the expiration of the said term of two years, for want of needful and necessary reparation and amendments of the same, in the roof, and divers parts of the machinery of the same; and of the due notice thereof given to her by the said plaintiff, the said defendant, by leave of the court here, for this purpose first had and obtained, according to the form of the statute in that case made and provided, saith, that the said plaintiff ought not to have or maintain his aforesaid action thereof against her, because she says, that in regard to said leak in said roof, that the same was small and inconsiderable, and was repaired by the said defendant within a reasonable time after she had notice of the same, and so as to *permit* any damage thereby to said plaintiff, and as to so much of the plaintiff's said declaration as regards the want of useful and necessary reparation and amendments of divers parts of the machinery in said mill, she says that the same was so badly and unskilfully managed and used by the said plaintiff, and his agents and servants, as thereby to be so injured and impaired as to render the reparations and amendments of the same, more frequent and difficult than would have been necessary had the said machinery been skilfully and properly managed and used by the said plaintiff and his agents; yet the said defendant in fact saith, that as often as she was notified by said plaintiff of the want of any useful and necessary reparation and amendments of said machinery, she caused the same, in a reasonable time thereafter, to be repaired and amended in a good and workmanlike manner, so far as the same could reasonably be required to be repaired and amended by her, according to the form and effect of the said articles of agreement, and of the said covenant of the said defendant, by her, in that behalf, made as aforesaid, to wit, at Washington county aforesaid, and this she, the said defendant is ready to verify. Replication to first plea, non-per-

formance, and for replication to the 2nd plea, by the said de-
fendant above pleaded, the said plaintiff, by his said attorneys,
saith, *precludi non*, &c., because he says that the said leak
in said roof was not trifling or inconsiderable, nor was it re-
paired within reasonable time after notice, as in said plea is
alleged, to wit, at the county aforesaid. And said plaintiff
further saith that said property was not badly, carelessly or
unskilfully managed by himself or agents, as in said plea al-
leged ; and denies that the necessity for any of the said repairs
mentioned in said 2nd plea, or any inconsiderable part there-
of were caused by such negligence or unskilful management ;
and denies that the repairs mentioned in said 2nd plea were
made as often as notice given, or within a reasonable time there-
after, as in said is alleged ; and of this he puts himself upon
the country, &c.

Verdict and judgment for plaintiff, and an appeal taken.
In the progress of the trial, three exceptions were taken by
the appellant.

*1st Exception.* The plaintiff to support the issue on his
part joined, offered in evidence, under the pleadings in this
cause, the articles of agreement on which this action is
founded. Articles of agreement made and entered upon this
27th day of January 1846, between Susan Middlekauff, of
Washington county, State of Maryland, of the one part, and
Michael P. Smith, of the county and State aforesaid, of the
other part : Witnesseth, that the said Susan Middlckauf, for
the consideration hereinafter mentioned, hath rented and
leased, and by these presents doth rent and lease to the said
Michael P. Smith, her mill property and forty acres of land,
being part of the same land known as Poplar Grove, from
the first day of April 1846, for one year, with the privilege,
that if the property is not sold in the mean time, the lease
shall be for two years, the said *Susan Middlekauff is to keep
the mill in good repair.* The said Michael P. Smith, on his
part, agrees to pay to the said Susan Middlekauff, the sum of
five hundred and fifty dollars, as a yearly rent for the said
property ; and the said Michael P. Smith, agrees to underpin,
chink and daub the warehouse, and also to remove a log ten-

ement from the upper farm, known as "Charlton's Forrest," and put the same where Samuel Middlekauff may direct, removing said house free from charge, and put the said house up in a plain and substantial manner, keeping a correct account of the expenditures of the same, for which he shall be paid, after deducting twenty-five dollars for rent of the said premises, whilst in his possession, *and also to keep the mill-dam in good repair at his own expense;* the said Michael P. Smith is to be as economical in the use of fire-wood as circumstances will permit, cutting dead and decayed timber under all circumstances. For the faithful performance of the said agreement, the said parties bind themselves, each to the other, in the penal sum of eleven hundred dollars, current money. In testimony whereof they have hereunto set their hands and seals, the day and year above written.

SUSAN MIDDLEKAUFF, (Seal.)

MICHAEL P. SMITH, (Seal.)

Signed and Sealed in presence of,

*J. Reitzell, Samuel Middlekauff.*

The due execution of which was admitted.

He then offered to prove by Daniel Stam, a competent witness, that the tail-race to the mill, mentioned in the said agreement, was not kept in good order and repair, which lessened the power of said mill, and impaired its usefulness. To which evidence the defendant, by his counsel, objected, on the ground, that there is no stipulation in said agreement, on the part of the defendant, to keep said tail-race in good repair, and therefore, the evidence in relation thereto, under the issues in this case, is not applicable or competent. But the court was of opinion, that the said testimony was pertinent to the issue, and legally competent for the purpose it was offered. To which opinion of the court, and the admission of said evidence, the defendant, by his counsel, prayed leave to except.

*2nd Exception.* Because Samuel Tice was rejected as a witness, after being sworn on his *voir dire* and stating that the defendant at the time said lease was made, instructed and requested him to act as her agent in superintending said re-

pairs, and to see that all was done, that she was bound to do under said agreement, and he agreed to do so, and acted as agent. That when he performed manual labor in the business, she paid him for it, but for the general superintendance, he did not claim or expect to be paid; that he considers himself a good mechanic, and skilful in such repairs, and thinks defendant, who is his sister, selected him as her agent, on account of such skill. That he was altogether competent to judge, when a mill was out of repair, and how it should be put in repair, and that defendant has given him no release. The plaintiff thereupon objected to the competency of said witness, because the gravamen of this action, was the breach of said agreement, resulting from the negligence of the said agent, in not keeping said mill in good order and repair, and therefore interested in the result of this suit, being answerable over to the defendant. And the court being of opinion, that the said witness was incompetent for said reason, rejected his testimony.

The third exception contains much testimony in relation to the supposed damages. This is followed by a prayer to the court by the defendant, that if they shall believe from the evidence in the cause, that any injury has resulted to the plaintiff, from the roof of the mill being in a leaky condition, or from want of repairs to the mill-race, then the measure of damages would be the costs and expense to which the plaintiff was, or would have been subjected, or have to pay for the purpose of properly repairing the same.

Because of a refusal by the court to give this instruction, the third exception was taken.

This case was argued before all the judges.

By *William Price* for the appellant, and *Roman* for appellee.

*Price* for the appellant.

The objection to the testimony of Daniel Stam, spoken of in the first exception, is, that the covenant does not require the appellee to keep the race in repair.

If there be no covenant to repair, the tenant is bound to make repairs. 4 *Kent's Com.*, 110. *Archbold's Law of Landlord and Tenant, p.* 15, to be found in 50 *Law Library.*

A grant of a mill is a different thing from a contract to keep a mill in repair.

We contend, that the tail race is not comprehended under the term *mill*. There is no stipulation in the articles requiring the lessor to keep the *tail race* in good repair. The words of the covenant are, that the said S. M. is to keep the *mill* in good repair. Reference was given to *Com. on Landlord and Tenant*, 104, *sec.* 3. *Archbold's*, 43, *(top.)* *Angel on Water Courses*, 41. *Brown's Legal Maxims*, 183, *(top.)*

*2nd Exception.* The facts proved do not show any legal liability of the defendant, and if she was not legally responsible to the plaintiff upon the case made by the plaintiff's proof, her agent could not be liable to her.

*Arch. Land. and Ten.*, 173, *(top.)*    7 *C. & P.*, 129. *Shephard's Touchstone*, 169.

*3rd Exception.* As to the measure of damages:    See 2 *Green. on Ev., sec.* 256.    2 *Med.*, 615.    7 *Pick.*, 284.

*Roman* for appellee.

The first question arises upon the agreement. The appellee contends, that the term *mill, eo nomine*, includes all the water courses necessary to its enjoyment, and a covenant to keep the mill in good repair, obliges him to keep the mill race cleared.

*Angel on Water Courses*, 43.    3 *Mason's C. C. Reports.* 280, 284.

This construction is confirmed by the subsequent clause, which requires the tenant to keep the dam in repair at his own expense.

If a covenant be doubtful, it is construed most strongly against the covenantor. *Platt on Cov'ts*, 141.    3 *L. Lib.*

The witness spoken of in the second exception, shows himself to be interested. 1 *Stark. on Ev.*, 110, 112.    *T. Rep.*, 589.    1 *Camp.*, 251.    3 *Eng. C. L. R.*, 53.    4 *Eng. C. L. R.*, 164.

A release was necessary to make him a competent witness. The cases in 2 *Med.* and 17 *Pickering*, not like this case.

*Price* in conclusion.

The breach, as to time, is from 1st April 1847, until two years. See *Green. on Ev., title, agent.*

MASON, J., delivered the opinion of the court.

We are prevented from considering many important and interesting questions, which might have been presented upon the evidence and pleadings in this cause, because they were not raised in the court below, as required by the act of 1825, chap. 117. Under that act, to authorise the Court of Appeals to review a judgment of the county court, it must appear by the bills of exceptions, that the point or question upon which the reversal or affirmance of the judgment is sought, was presented substantially to the county court, and that the decision was made upon such point or question. In the case now before us, there were three exceptions taken to the ruling of the court below, and we shall proceed only to the consideration of the questions in their order, which arise out of those exceptions.

The first question raised in the first bill of exceptions, was as to the admissibility of the evidence of Stam, which related to the want of *repairs to the tail-race.* The appellant, in her lease to the plaintiff, (appellee,) had covenanted "to keep the mill in good repairs," and under this general covenant, the appellee sought to make her answerable in damages for neglecting to keep the *tail-race in good repair.* If we were to confine ourselves strictly to the precise point raised, and the manner in which it is presented, we would clearly be obliged to pronounce the decision of the county court erroneous, but for a different reason than the one assigned for the decision. This court must consider what particular point or question the county court has decided, and determine accordingly, whether it is correct or erroneous; and not whether the reasons assigned by the counsel or court, on the record, authorises what has

been done; and, therefore, where the admissibility of the evidence offered, as in this case, being objected to, it is wholly immaterial whether it was admissible or not for the special reasons assigned, but this court will consider the distinct question, whether it was or was not competent testimony.   3 *Gill and John.*, 435

In the language of the first exception, "the plaintiff offered to prove by Daniel Stam, that the tail-race to the mill was not kept in good order and repair, which lessened the power of said mill, and impaired its usefulness." Nothing is said about *the time* when the *mill-race* was thus out of repair.   It may have been conceded that the race *was* out of repair, but denied that it was out of repair during the time of the plaintiff's lease, or during the time alleged in his declaration that he sustained injury, by reason of the omission to repair on the part of the defendant.   For this reason, we think the testimony ought to have been rejected, while we might concede that the obligation to repair the race was embraced in the general covenant to keep the mill in good repairs, and that evidence might have been offered to show that those repairs were not made as alleged in the declaration.

The inference however is irresistible, that although no time is fixed by the witness in his testimony, as set out in the first exception, in regard to the want of repairs in the race, yet the testimony which formed the subject of this exception, and to which the mind of the court below was evidently directed, was the same which is fully set forth in the second exception. Though more explicit as to time, yet the witness still failed to bring the want of repairs complained of, within the time alleged in the declaration of the plaintiff, in which the defendant is charged with having suffered the mill and race to be in bad repairs.   In order to make testimony legally admissible, it must correspond with the allegations contained in the declaration, and be confined to the issue.   In the books a distinction is made between allegations of matter of substance, and allegations of matter of essential description.   The former may be substantially proved ; but the latter must be proved

with a degree of strictness, extending, in some cases, even to literal precision. Every allegation, essential to the issue must be proved, in whatever form it be stated. There is however a class of circumstances, not essential in their nature, such as time for example, but which may become so by being insepa- rably connected with the essential allegation. These must be proved as laid, unless they are stated under a *videlicet*, the office of which is to mark, that the party does not undertake to prove the precise circumstances alleged; and in such cases he is not holden to prove them.    1 *Greenleaf on Ev. sec.* 60. In the case now before us, the plaintiff in his declaration posi- tively alleges without any qualifications, and unaccompanied with a *videlicet*, that "on the contrary, the said defendant, suffered and permitted the said mill and the said mill-race to continue so ruinous, and in bad repair, from the first day of April 1847, until the expiration of the said term of two years." We think the plaintiff should be confined in his proof, under this averment, to the time when he alleges that the mill was in *bad repairs. Arch. Land and Ten.*, 178, *(*53 *Law Lib.*, 173.*)* We have examined the testimony of Stam attentively, and find that no part of it fixes the omission of the defendant, to repair the mill-race within the time laid in the declaration, which was subsequent to the 1st April 1847. He speaks positively of its being out of repair during the lease, but *non constat*, it might have been out of repair prior to the 1st April 1847, a period in which the plaintiff makes no complaint in his declaration, and which if he had, the defendant might suc- cessfully have refuted.

While we are willing to concede, that the general cove- nant "to keep the *mill* in good repair," would embrace the obligation to keep also the tail-race in repair, yet we are not willing by any such construction of the contract, to shift the legal and usual responsibilities which belong to the miller over to the landlord.    By keeping the mill in repair, is not meant the ordinary attention and care which is usually re- quired of millers in operating mills, and which indeed con- stitute a part of their trade; such as, for instance, cleaning and

dressing the stones, adjusting and regulating the general ma-
chinery of the mill, cleaning the race of such deposits or ac-
cretions as would follow the ordinary use of the mill, and
such other similar acts which demand the miller's skill, yet
which require neither the expenditure of money, nor the con-
sumption of much time or labor.   Under the covenant to re-
pair generally, the covenantor will be bound to keep the build-
ing in as good a state, as it was when the agreement was
made, to make good all deteriorations arising from natural
decay, and all injuries resulting from inevitable accident, but
he is not bound to do more.   And where an old house is rented,
with the usual covenants to keep the same in repair, the cove-
nantor will not be bound to put it in an improved state, nor to
avert the consequences of the elements, but only to keep it in
a state in which it was at the time of the demise, by the timely
expenditure of money and care.   *Guttridge vs. Munyard,* 7
*C. & P.,* 129.   *Archbold's Law of Landlord and Tenant,* 176.
*(53 Law Lib.,* 173.*)*

The court, therefore, should have confined the testimony of
the plaintiff to such repairs, as were clearly the duty of the
landlord to have made, which we think has not been done in
this case.   For the reasons stated, we reverse the court below,
on the first exception.

As respects the testimony of Samuel Middlekauff, embraced
in the second exception, we are of opinion that the county
court was right in rejecting it.   While it is not in the power
of any person, to force another to render him offices of friend-
ship or service, yet if these offices are voluntarily or even
gratuitously assumed, the party is bound to act in conformity
with the terms of the undertaking, and faithfully to discharge
the duties thus assumed.   An agent of this kind is responsi-
ble to his principal for the consequences of his negligence.
*Coggs vs. Bernard,* 2 *Raym.,* 909.   *Walker vs. Smith,* 1
*Wash. C. C. Rep.,* 152.

Being thus the agent of the defendant, and liable to her for
any damages which might result to her from a neglect of his
duty, Middlekauff is, therefore, clearly interested in the result

of this suit, and not a competent witness without a release. The principle is thus substantially stated in the books.

In an action against the principal for damages, occasioned by the neglect of his agent, the latter is not a competent witness for the defendant, without a release; for he is, as a gene ral rule, liable to his employer, in a subsequent action, to refund the amount of damages which the latter may have paid; and though the record will not be evidence against the agent, to establish the fact of misconduct, yet it will always be admissible to show the amount of damages recovered against his employer. *Hamilton vs. Cutts,* 4 *Mass.,* 349. *Tyler vs. Ulmer,* 12 *Mass.,* 163. *Miller vs. Falconer,* 1 *Camp.,* 251.

It must be admitted that the question arising upon the third exception, or upon the defendant's prayer, is one which is attended with very considerable difficulty. To adopt any general rule in relation to the measure of damages, which would apply to, and govern every case which might arise, involving that question, is a matter almost of impossibility. The defendant, in her prayer, asks the court to limit the measure of damages, to the costs and expense to which the plaintiff would have been subjected, for the purpose of properly repairing the mill and race; the injury resulting from the neglect to make said repairs, being the ground of the plaintiff's action. The court, we think, were right in refusing this prayer. To have granted it, would have had the effect of confining the plaintiff's damages within limits too narrow. On the other hand, we think, that while the court properly rejected this prayer, it could, with propriety, nevertheless, have prescribed some limits beyond which the plaintiff should not go in the introduction of testimony to swell his damages, and should have adopted some rule as a guide to the jury in the amount of damages to be awarded in the case. The general rule of damages in cases like the one now before us, as laid down by Mr. W. W. Story, in his work on contracts, sec. 1022, is this: "The consequential injury, fairly and naturally resulting to the plaintiff from the breach, will be ground for additional compensation. But merely speculative injuries, founded on un-

certain future contingencies, afford no ground for damages."
And in *Loker vs. Damon*, 17 *Pick.*, 288, *Shaw, C. J.*, lays
down the same rule, but in distincter and more precise terms.
"In assessing damages," he says, "the direct and immediate
consequences of the injurious act are to be regarded, and not
remote, speculative and contingent consequences, which the
party injured might easily have avoided by his own act."
The rule is still further narrowed down, and made more
directly to apply to the case we are considering, in *Archbold's
Law of Land. and Ten.*, 177, (53 *Law Lib.*, 174,) and *Story
on Contracts, sec.* 930.   The substance of these two authori-
ties, is, that the mode of proving the damages sustained by
the breach of a covenant to repair, is, by showing by compe-
tent persons, the sum it would take to put the premises into
that state of repair in which the defendant ought to have kept
them under the covenant, and the jury in such cases may
allow, not only the actual expense of the repairs, but also
some compensation for the loss of the use of the premises,
whilst they were undergoing repairs.   In the case of *Blan-
chard vs. Ely and others*, 21 *Wend.*, 342, the court decide, that
in an action for the recovery of the price stipulated for the
building of a steamboat, the plaintiff is entitled to recover the
full amount, without deduction by way of recoupment of
damages to the defendant, in consequence of injury sustained
by him for the loss of trips, and the profits resulting there-
from, occasioned by defects in the boat, or its machinery;
but that the defendant is only entitled to an allowance for
moneys necessarily expended by him in supplying defects in
the vessel, so as to make it conform to the plan specified in
the contract.   So, in the same case, where a number of
authorities are cited, in illustration of the principle decided,
the court lay down this general rule, that a lessee who is
evicted by a title paramount to that of his lessor, may claim
the expense of removal and indemnity for advanced rents, but
is not entitled to recover for loss of custom established while
residing in the house.

It remains for the court to apply these general principles,

to the case now before us. Whether the injuries complained of, by the plaintiff, are such "which he might easily have of the repairs, which were required, and the ability of the avoided by his own act," will depend entirely upon the nature plaintiff to have made them. If the needed repairs were such as might have been made without the expenditure of money, and with little care and labor, then clearly, the plaintiff not having made them would have been liable to the imputation of having invited or permitted the injuries, of which he complains, and could not recover damages for the same. So, if the plaintiff placed his wheat, where he knew at the time, it would be injured by the drippings from a leak in the roof, he is not entitled to recover for the injury he may sustain thereby ; for such conduct would have amounted to gross negligence, and he alone should suffer for his folly. Further, if the jury should find that the plaintiff, was able without inconvenience to have repaired the race, which the witness thinks could have been done *with twenty dollars worth of labor*, it would have been equivalent to *"gross negligence,"* (the language used in *Loker vs. Damon,*) for him to have omitted doing so, and thereby involved himself in a loss of ten dollars daily, as estimated by the witness.

We do not however mean to intimate, that under all circumstances the lessee in this case was first bound to repair at his own cost. Many repairs may have been needed which his peculiar situation or circumstances would not have permitted him to have made, and thus one of the very purposes he may have had in view in requiring from his landlord a covenant to repair, might have been defeated. In such a case it could not be said that the tenant permitted, "or could have avoided," the injuries of which he complains, because it was not in his power to have prevented them.

Under this covenant, clearly, the tenant would be entitled to be remunerated for all expenditures of money, time and labor made in repairing the mill, also compensation for the loss of the use of the premises, whilst they were being placed in the condition in which the landlord should have kept them ;

and for all direct and immediate damages resulting from the neglect of the lessor to make such repairs, and which it was not in the power of the tenant easily to have avoided.    Upon the authority of *Story on contracts*, and the case of *Blanchard and Ely*, 21 *Wend.*, (and numerous other cases we might cite,) we think the loss of custom complained of by the plaintiff, and proved by the witnesses, was too speculative, and depended upon too many and remote contingencies, to constitute a proper ground for damages in this case.

We think complete justice cannot be done without the cause being submitted to another jury.    The plain inference is, that the jury who determined this case, were permitted to consider matters which ought not to have entered into their verdict, and have allowed damages under the evidence submitted to them, which exceed those which the law and justice of the case would warrant.    We therefore reverse the judgment and remand the cause.

*Judgment reversed and procedendo awarded.*