Lawson *vs.* Price.

(Decided 16th June, 1876.)

JAMES U. LAWSON *vs.* LEVI PRICE.

*Negligence not the Gravamen of an Action on the case for Obstructing a mill-race—Duty of a person Injured by the Obstruction of his mill-race, to Avoid the Consequences of the Injury as far as he reasonably can—Party obstructing a mill-race not Entitled to Notice from the Party Injured to remove the Obstruction before Action is brought—Measure of Damages—Lost profits in a Business a proper element in Estimating damages.*

In an action for obstructing the race leading to the plaintiff's distillery by throwing or placing therein, or by cutting and allowing to fall therein trees, branches, logs, stumps, brush, chips, stakes, leaves, &c., whereby damage accrued to the plaintiff, the question is not whether the defendant has acted with due care, but whether his acts have occasioned the damage complained of. If the acts complained of were done by the defendant, or by his agents or servants in the course of their employment, they were unlawful invasions of the plaintiff's rights of property, and it matters not that they were done without negligence. Negligence is not the gravamen of the action.

Lawson *vs.* Price.

Where wrong is done by the obstruction of a mill-race, it is the duty of the party injured to avoid the consequences of such wrong as far as he reasonably can. If, by labor, or a reasonable outlay of money, he can stay or avoid the consequences of the wrong, he should do so. All consequences resulting from his own wilful failure or gross neglect to use timely and reasonable precaution to prevent an extension or increase of the injury, should fall upon himself.

The placing an obstruction in a mill-race, is an infringement of the owner's absolute right of property, and the continuing such obstruction is equally an infringement of the right, and this the party placing the obstruction in the race is bound to know at his peril, and he has no claim to notice from the owner to remove the obstruction before action brought.

In an action on the case for obstructing the race leading to the plaintiff's distillery, the declaration averred that by reason of the wrong complained of the plaintiff had "lost the whole benefit, profit and advantage of his said distillery, and had been greatly prejudiced and damnified in his possession thereof, and in his said trade, business and employment;" and there was very definite proof before the jury as to the extent of profit that was lost in consequence of the obstruction of the race. HELD:

That the plaintiff was entitled to recover for all the consequences legitimately resulting from the wrongful acts of the defendant, including the loss of profits on the product of the distillery during the time the injury was suffered.

APPEAL from the Circuit Court for Frederick County.

*Defendant's First Exception.*—The plaintiff offered in evidence to prove his title to the race in question, sundry deeds, and then proved by Levi Price, the plaintiff, that he owned the distillery mentioned in the *nar.;* that the race runs through the land of the defendant nearly the whole length of the race, and is from two to four feet wide at bottom, and from five to six feet wide at top, and is about 600 feet long ; that it has no dam except a few logs put across the stream to turn the water in the race ; that prior to January, 1872, there was a strip of woods along the race from fifty to one hundred and fifty yards wide, and timber on both sides of the race ; that prior to January, 1872, he had water enough from this race to do the work at the

Lawson *vs.* Price.

distillery, and that the water passed freely along the race except when the defendant made crossings over the race and places for watering his stock, by driving down stakes to prevent hogs from going up or down the race; that the water was in a great measure his power to grind and mash, and do the work at the distillery; the plaintiff then asked the witness "what was the ordinary capacity of your distillery prior to January, 1872?" To this question the defendant objected, but the Court overruled the objection and permitted the question to be asked and answered, and the defendant excepted.

*Defendant's Second Exception.*—After the aforegoing bill of exception made a part of this, had been taken, signed and sealed, the witness stated that the capacity of his distillery was from 90 to 105 gallons a day prior to January, 1872; and then proved that from January to July, 1872, the race was obstructed, and that the plaintiff had seen said obstructions there frequently during that time, but did not know who put them in the race, he saw Lawson's hands cutting timber; that the defendant was during that time clearing his timber land on the opposite side of the race; plaintiff saw Lawson's hands cutting timber, and that chips, butts, logs, &c., were in the race, and trees across the race, that afterwards the cleared land was planted in tobacco, that the obstructions came from clearing timber, and ploughing too near the edge of the race; that he, the plaintiff, cleaned the race out in October, 1872, at a cost of $30, that he was obliged to use from January to June, 1872, his engine more than usual in consequence of the obstructions, and this required him to consume $100 worth more of fuel than he had ever done before, that the water power was reduced four-fifths by these obstructions from January to June 24, 1872; thereupon he was asked, "What effect did that reduction of water power have on the manufacturing capacity of your distillery?" to this question the defendant objected, but

the Court overruled the objection and permitted the question to be asked and answered, whereupon the defendant excepted.

*Defendant's Third Exception.*—After the foregoing bills of exception. made a part of this, had been taken, signed and sealed, the witness replied that it affected it to such an extent that he could do nothing without the aid of his engine; he was then asked, "To what extent in the production of whiskey as to quantity was the capacity of your distillery affected by these obstructions to the flow of water?" to which the defendant objected, but the Court permitted the witness to answer, whereupon the defendant excepted.

*Defendant's Fourth Exception.*—After the aforegoing bills of exception made a part of this, had been taken, signed and sealed, the witness replied that it would have diminished it all because he could have made no whiskey without his engine, and he was then asked, "what amount of whiskey did you commonly and usually manufacture during the same period in former years when the race was unobstructed?" the defendant objected, but the Court overruled the objection and permitted the question to be asked and answered, and the defendant excepted.

*Defendant's Fifth Exception.*—After the aforegoing bills of exception made a part of this, had been taken, signed and sealed, the witness replied, from 23 to 2500 gallons; the witness was then asked: "From the 24th June to the last of July, what kind of whiskey was usually manufactured at your distillery, and at distilleries generally?" The defendant objected, but the Court overruled the objection and permitted the question to be asked and answered, whereupon the defendant excepted.

*Defendant's Sixth Exception.*—Abandoned.

*Defendant's Seventh Exception.*—Omitted, this Court having held that it should have been abandoned for the same reason assigned for abandoning the Tenth Exception.

*Defendant's Eighth Exception.*—After the aforegoing bills of exception made a part of this, had been taken, signed and sealed, the plaintiff proved by S. G. Cockey, that his father formerly owned the farm belonging to the defendant; that he knew the stream which supplied the race in question, and that he never knew it to go dry entirely. The said witness on cross-examination, proved that when his father owned the said farm there were three fences across the race, besides one or two watering places; that the fences did not interfere with the water, but that witness' father put stakes into the race under the fences that crossed it, to keep stock out of the fields; this 'was a number of years before the defendant bought the farm, and as long ago as the witness could recollect. Upon re-direct examination by the plaintiff the witness said, that the stakes would sometimes catch brush and drift. Where-upon he was asked, "What would you do when these stakes collected leaves and drift;" but the defendant objected; the Court overruled the objection, and permitted the question to be asked and answered, and the defendant excepted.

*Defendant's Ninth Exception.*—After the aforegoing bills of exception made a part of this, had been taken, signed and sealed, the witness replied, in response to the inter-rogatory contained in the last preceding bill of excep-tion, that "we would take them out," whereupon the plaintiff asked the witness "why did you take them (meaning the leaves and drift spoken of in the preceding bill of exceptions) out?" To this question the defendant objected, but the Court overruled the objection, and per-mitted the question to be asked and answered, and the defendant excepted.

*Defendant's Tenth Exception.*—Abandoned, as the ques-tion asked did not appear by the record to have been answered by the witness.

*Defendant's Eleventh Exception.*—Sufficiently stated in the opinion of the Court.

*Defendant's Twelfth Exception.*—Referred to in the opinion of the Court.

*Defendant's Thirteenth Exception.*—The defendant asked the Court to instruct the jury as follows:

1. That it was lawful for the defendant to cut timber on his own lands and to clear and cultivate said land, and that if the jury shall find from the evidence that the defendant did cut, or cause to be cut, the timber on his own land, adjoining the race of the plaintiff, and did clear and cultivate said land, and that the defendant was not guilty of negligence in cutting said timber, or causing the same to be cut, or in the clearing and cultivation of said land, that then the plaintiff is not entitled to recover, even though the jury should find that by reason of such cutting or clearing or cultivating, brush, logs or other timber or earth, fell into said race, and obstructed the flow of water therein, and damaged the plaintiff.

2. That it was lawful for the defendant to clear his timber land and to cultivate the same, and if the plaintiff has been injured thereby, his remedy at law depends upon his ability to prove misconduct or negligence on the part of the defendant, or his agents and servants; in order to determine what is such negligence as would subject the defendant to an action at law, it is necessary that the jury should ascertain from the evidence in this cause, whether the defendant had done that which an ordinarily prudent man would not have done, in exercising his right in his own premises, and whether the injury resulting to the plaintiff was the result of negligence or misconduct, or the result of mere accident. If the jury shall find from the evidence that the injury was the result of misconduct or negligence, then the plaintiff is entitled to recover in this action. If the result of accident, then the plaintiff is not entitled to recover. If a reasonably careful man is as careful to avoid injury to his neighbor's property as to his own, it is a fact from which the jury may infer that such

negligence did not exist as would subject the defendant to damages for any injury resulting to his neighbor; but if he acted recklessly, and without regard to his own or his neighbor's safety, he would be liable.

3. That if from all the evidence in the cause, the jury shall believe that the defendant cut, or caused to be cut, the timber on his own land, adjoining the race of the plaintiff, and cleared and cultivated said land, and in so doing did not use the diligence that an ordinarily careful man would have used, to prevent brush, leaves, earth or other filth arising from said cutting, clearing or cultivating said land by said defendant or his agents, from getting into the race of the plaintiff; and that by reason of the not using of such diligence by the defendant or his agents, brush, leaves, earth, or other filth arising from said cutting, clearing or cultivating of said land by the defendant or his agents, did get into the race of the plaintiff, and shall further believe from the evidence, that the plaintiff, by the use of such diligence as an ordinarily careful man would have used about his own affairs, might have prevented said brush, leaves, earth or other filth arising from said cutting or cultivating of said land by the defendant or his agents, from getting into the race of the plaintiff, and that the plaintiff failed or omitted to use such diligence, that then the failure or omission of the plaintiff to use such diligence, contributed to the immediate cause of the injury to the distillery of the plaintiff, complained of in the plaintiff's declaration, (if they shall find any injury,) and that the plaintiff is not entitled to recover damages for any injury to which such want of diligence of the plaintiff contributed.

4. That if the jury shall find from the evidence, that the plaintiff has suffered damage during the time mentioned by him in his evidence, by reason of a diminution of the supply of water to his distillery; nevertheless, their verdict must be for the defendant, unless they shall further

find from the evidence, that such damage was caused by obstructions in said race, placed there by the defendant, or by some agent or servant of his.

5. That if the jury shall find from the evidence, that there were logs, stakes, brush, earth, filth and other materials mentioned in the declaration, in the said race, and that the same were placed therein by him, or caused to be placed therein by him; yet their verdict must be for the defendant, unless they shall further find from the evidence, that the plaintiff suffered and sustained damage and loss by reason of such obstructions.

6. That to entitle the plaintiff to recover in this action, the jury must not only find from the evidence that there were obstructions in said race, but they must find from the evidence, that the defendant either placed said obstructions in said race, or caused the same to be placed therein.

7. That there is no evidence in this cause from which the jury can find that any damage was occasioned to, and sustained by, the plaintiff, by reason of obstructions in the race mentioned in the declaration in this cause, prior to January 1st, 1872, or subsequent to July 25th, 1872; and that if the jury shall find from the evidence, that there were obstructions in said race subsequently to July 25th, 1872, and that the same were placed there by the defendant, or caused to be placed there by him, subsequently to July 25th, 1872, that then the plaintiff is not entitled to recover in consequence of such obstructions, and that the fact of such obstructions being in said race (if found to be there,) subsequently to July 25th, 1872, is not evidence from which the jury can find that the race was obstructed prior to said July 25th, 1872.

8. That if the jury shall believe from the evidence, that the stakes spoken of by the witness in this cause as being at the bottom of the fences crossing the plaintiff's race, and in said race, or other stakes of a similar character, were placed in said race before the plaintiff owned

Lawson *vs.* Price.

his said distillery property, and before his said distillery was built, that then the plaintiff is not entitled to damages for any injury which the jury may find was occasioned plaintiff by said stakes, unless they shall further believe from the evidence that the plaintiff gave notice to the defendant before the institution of this suit, that the said stakes were an injury to him and his property, and requested the defendant to remove said stakes from his said race.

9. That if the jury shall believe from all the evidence in the cause, that the race of the plaintiff was wrongfully obstructed by the acts of the defendant, or of his agents, on the 24th of June, 1872, and that such obstructions caused the stoppage of the plaintiff's distillery; and that the plaintiff was prevented thereby from using his distillery from the said 24th day of June, to the 25th day of July, 1872, and thereby sustained a damage equal to the sum of forty dollars per day; and shall further believe from the evidence, that the plaintiff knew of said obstructions to his race, on the said 24th day of June, and of their continuance to the 25th day of July, 1872, and of the damage sustained by him in consequence thereof; and and shall further believe from the evidence, that the said obstructions were such, as might have been removed by the expenditure of thirty dollars; and shall further find from the evidence, that the plaintiff omitted to remove said obstructions from June 24th to July 25th, 1872, that then the plaintiff is not entitled to recover in this action any damages which may have been sustained by him, by reason of the said stoppage of his distillery, from the time that the jury shall find that such obstructions might have been removed from said race.

10. That if the jury shall find from the evidence, that the plaintiff sustained any loss between the first of January, 1872, and the 25th of July, 1872, at his distillery; and shall further find, that during said period,

there were logs, brush and other obstructions in said race, that nevertheless the plaintiff is not entitled to recover in this action, if the jury shall further find, from the evidence, that such damage was caused by the natural decrease and diminution of the water in said race, or the stream supplying the same.

11. That if the jury shall believe from all the evidence, that the plaintiff is entitled to recover anything in this action, then the true measure of damages is the amount, which the jury shall believe from the evidence was necessarily expended by the plaintiff, in making good, any deficiency in the producing capacity of the plaintiff's distillery, (if the jury find any deficiency in said producing capacity, and that the same was made good,) occasioned by the defendant's wrongful diminution of the supply of water of the distillery of the plaintiff, from the plaintiff's race; the amount which the jury shall find was necessarily expended by the plaintiff in cleaning out said race, occasioned by the wrongful acts of the defendant or his agents; and such amount as the jury shall find was a fair rental value for plaintiff's distillery, for such time as the jury shall find that the plaintiff was entirely deprived of the use of said distillery, by reason of the wrongful obstruction of the water in the race of the plaintiff by the defendant, or his agents.

The Court, (BOUIC and LYNCH, J.,) granted the second, fourth, fifth, sixth and ninth prayers and rejected the others. To the rejection of his prayers the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was submitted to BARTOL, C. J., BRENT, GRASON, MILLER and ALVEY, J.

*Frederick J. Nelson* and *James McSherry*, for the appellant.

*Francis Brengle, John E. R. Wood* and *John Ritchie,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This is an action on the case, brought by the appellee against the appellant, for obstructing the race leading to his distillery.

There was a demurrer to the declaration, which was overruled, except as to the first count; but the appellant makes no question on the demurrer, and we shall take no further notice of it.

In the course of the trial a great number of exceptions were taken by both sides, many of which are but repetitions, raising the same question over and over again; and of the appellant's exceptions, the sixth and tenth are abandoned by him; and for the same reason assigned for abandoning the tenth exception the seventh should have been abandoned also. The question allowed to be put to the witness is excepted to, but the answer, which may have been wholly unimportant or immaterial, is not given. Before we can reverse the ruling excepted to, we must be able to see that the party really has ground for exception, and may have been injured by what was done. For aught that appears, the answer of the witness may have been more favorable te the appellant than to the appellee.

The first, second, third, fourth and fifth exceptions taken by the appellant relate to the question of damages, and may be considered in connection with the eleventh prayer of the appellant, relating to the same question, and which was refused by the Court.

If it be true, as contended by the counsel for the appellant, that the evidence excepted to in the eighth and ninth exceptions was wholly immaterial, we fail to perceive that it could have done the appellant any injury whatever. We think, however, that it was not altogether immaterial. It served to show how the race was treated, and the rights

of parties recognized therein, by the former owner and occupant of the land, under or through whom the appellant claims. The rulings in these exceptions must, therefore, be affirmed.

The ruling in the eleventh exception to the admissibility of evidence stated in the twelfth, must also be affirmed. The witness had been a government gauger at the appellee's distillery, and had stated how often and for what length of time the distillery had stopped operation, during the years 1870, 1871, 1872 and 1873, and the quantity of whiskey that it was required, under the revenue law, to make per day. He was then asked by the appellee "what would be the damage to the plaintiff from the diversion of the water-course, from the first of January to the 25th of July?" To this question, the witness replied, that from January to June 24th, 1872, the plaintiff did not make less whiskey than the minimum government capacity of his distillery. This evidence would really seem to be favorable to the appellant. It is not definite, it is true, except to the fact that the quantity was not less than a certain number of gallons per day; but, at any rate, we do not see upon what ground it should have been excluded. The question may not, perhaps, have been in proper form; but the answer being unobjectionable, and stating a fact material and important to the inquiry before the jury, the Court was right in not excluding it. And the evidence to the admissibility of which the twelfth exception was taken, we think was also properly admitted. It was of the declarations of the appellant himself, in regard to the condition of the race, and which declarations were indicative of defiance and malice towards the appellee. That the evidence was brought out in rebuttal can form no objection to its admission; the appellant himself had been interrogated, on cross-examination, as to the declarations, and he had denied making them. The evidence, therefore, was admissible for the double purpose of im-

peaching the appellant and supporting the issue on the part of the appellee.

The appellant offered eleven prayers, of which the second, fourth, fifth, sixth and ninth were granted, and the other six were rejected. In those that were granted the appellant would appear to have obtained the benefit of all the law to which he could fairly make claim; and, indeed, it may be questionable whether he did not get the benefit. of more than he was strictly entitled to have granted him.

The. first prayer was properly refused. It sought. to make the appellee's right to recover depend upon the existence of negligence on the part of the appellant. The action was for obstructing the appellee's mill-race by throwing or placing therein, or by cutting. and allowing to fall therein, trees, branches, logs, stumps, brush,.chips, stakes, leaves, etc., whereby damage accrued to the appellee. The question, in such case, is not whether the defendant has acted with due care, but whether his acts have occasioned the damage complained of. If the acts complained of were done by the appellant, or by his agents or servants in the course of their employment, they were unlawful invasions of the appellee's rights of property, and it matters not that they were done without negligence. Negligence is not the gravamen of the action. *Scott vs. Bay*, 3 *Md.*, 431, 445–6; *Leame vs. Bray*, 3 *East*, 593, 600; *Fletcher vs. Ryland*, *L. Rep.*, 1 *Ex.*, 163, *S. C., L. Rep.*, 3 *H. L.*, 330; *Wilson vs. City of New Bedford*, 108 *Mass.*, 261; *Cahill vs. Eastman*, 18 *Minn.*, 324; *St. Peter vs. Denison*, 58 *N. Y.*, 416. See also *Bellinger vs. The N. Y. Central R. Co.*, 23 *N. Y.*, 42, 47.

The third prayer was also properly rejected. It sought to exclude the appellee's right to recover, while conceding the commission of the wrong by the appellant, upon the ground of contributory negligence by the appellee himself. The record discloses no evidence whatever of any

negligence of the appellee in connection with the commission of the wrong by the appellant.  After the wrong was committed, it was certainly the duty of the appellee to avoid the consequences of that wrong, as far as he reasonably could.  If, by labor, or a reasonable outlay of money, he could have stayed or avoided the consequences of the appellant's wrong, he should have done so.  All consequences resulting from his own wilful failure or gross neglect to use timely and reasonable precaution to prevent an extension or increase of the injury, should fall upon himself.  The illustrations given by Mr. Chief Justice SHAW, in *Loker vs. Damon*, 17 *Pick.*, 284, strikingly enforce the principle.  Suppose, says the Chief Justice, a man should enter his neighbor's field unlawfully, and leave the gate open; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open, and passes it frequently, and wilfully and obstinately, or through gross negligence, leaves it open all summer, and cattle get in, it is his own folly.  So, if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of damage.  But if the owner suffers the window to remain without repairing a great length of time after notice of the fact, and his furniture, or pictures, or other valuable articles, sustain damage, or the rain beats in and rots the window, this damage would be too remote.  This principle is sanctioned by this Court in the case of *Middlekauff vs. Smith*, 1 *Md.*, 329, 342, where the case of *Loker vs. Damon* is referred to with approval.  But in this case, the object of the prayer was to exclude *in toto* the appellee's right to recover damages for any injury to which his want of diligence contributed.  It is only to the extent of the contribution by wilful failure or gross neglect, that the party, in a case like the present, should be precluded from recovering.  It is a question to be considered in assessing the damages, and does not go to the

right of the plaintiff to maintain his action and recover against the wrongdoer. *Sedg. on Dam.*, (6 *ed.*,) 107. But, by the ninth prayer, which was granted, the appellant was given the full benefit of all that he could possibly contend for with respect to this question.

The seventh prayer was clearly objectionable, and was therefore properly refused. It was designed to restrict the power of the jury in deducing conclusions from certain facts before them. We can perceive no reason why it should not be competent to the jury, in considering all the circumstances of the case, to infer from the fact that obstructions were found in the race subsequent to the 25th of July, 1872, that they were there before that time. And as to the eighth prayer, that, we think, was also properly rejected. We are not aware of any principle that would require notice to be given by the plaintiff to the defendant, in a case like this. The placing the obstruction in the race was an infringement of the owner's absolute right of property, and the continuing such obstruction was equally an infringement of the right, and this the appellant was bound to know at his peril. He had no claim to notice to remove the obstruction before action brought; and therefore there was no error in refusing the eighth prayer.

The Court below was right in rejecting the tenth prayer, if for no other reason, because the proposition it contained was fully embraced by the fourth and fifth prayers, which were granted. The appellant, therefore, was not injured by the rejection of his tenth prayer, even if it were conceded to embody a correct principle of law,—a question in regard to which we express no opinion.

We come now to the question of damages, raised by the eleventh prayer, which was rejected, and by the first, second, third, fourth and fifth exceptions, as to the admissibility of evidence relating to the same subject.

The prayer proposed, as the measure of damages, the amount which should be found that the appellee *necessarily*

expended in making good any deficiency, in the producing capacity of his distillery, occasioned by the wrongful obstruction of his race; the amount which he *necessarily* expended in clearing the race, and such amount as the jury might find to be a fair rental value of the distillery for the time the appellee was *entirely* deprived of the use of it, by the wrongful obstruction of the race. As opposed to this measure of damages, the appellee claimed to be entitled to recover for all the consequences resulting from the wrongful acts of the appellant, including the loss of profits on the product of the distillery, during the time the injury was suffered. And in his declaration the appellee averred that, by reason of the wrong complained of, he had "lost the whole benefit, profit and advantage of his said distillery, and had been greatly prejudiced and damnified in his possession thereof, and in his said trade, business and employment.".

Whatever diversity of judicial opinion and decision may exist upon this subject, we' think there was no error committed by the Court below in refusing the prayer of the appellant. There was very definite proof before the jury as to the extent of profit that was lost in consequence of the obstruction of the race; and we think the prayer was too restrictive as to the subjects in respect to which damages could be properly assessed.

In the case of *White vs. Moseley*, 8 *Pick.*, 356, a question was presented very similar to that presented in this case. That was an action of trespass for breaking down and destroying part of a mill-dam, and damages were assessed for the cost of repairing the dam, and also for interruption to the use of the mill, or diminution of profits occasioned by the break in the dam. It was there objected that damages for the latter cause could not be recovered in that action; but the Court held otherwise, and said: "The interruption to the use of the mill and the diminution of the plaintiff's profits on that account, were alleged in

the declaration and proved at the trial; and we think this was right. The plaintiffs are entitled to recover for all the damages they suffered by reason of the trespass.'' This ruling of the Court is embodied in the text of *Sedgwick on Damages*, *p.* 89, (6 *ed.*); and, in a note to the same paragraph, it is said that "It may now be assumed to be the general rule that in actions of tort, where the amount of profits of which the injured party is deprived, as a legitimate result of the trespass, can be shown with reasonable certainty, such profits constitute *to that extent* a safe measure of damages. In these cases, the rule adopted with reference to certain breaches of contract which makes the offending party liable for the loss of profits, so far only as he foresaw, or should have forseen that particular consequence of his act, does not apply. He who commits a trespass must be held to contemplate all the damages which may legitimately follow from his illegal act, whether he might have forseen it or not; and so far as it is plainly traceable, he should make compensation for it. To this extent, the recovery of a sum equal to the profits lost, while fairly within the principle of compensation, is also within the limits which exclude remote consequences, from the scale in which the wrong is weighed.'' And to this extent, we think, this Court has gone, in support of the right to recover for lost profits, in the case of *Brown & Otto vs. Werner*, 40 *Md.*, 15, and we think the principle reasonable and just. It is true, it may not be practicable in all cases, indeed we know it is not, to distinguish with accuracy what is certain, and therefore within the rule just stated, from what is uncertain, and therefore to be excluded, as too remote and contingent. But cases are abundant in which lost profits of a trade or business have been determined to be proper elements in estimating damages; and if it be a rule that can be applied in any case, we can perceive no sufficient reason for excluding it in this.

As to the questions of evidence raised by the several exceptions bearing upon the subject of the measure of damages, they all seem to have had in view the exclusion of lost profits as an element of the damages to which the appellee was entitled. But whether with reference to the extent of profits lost, or the measure and extent of damages according to the appellant's prayer, the evidence would seem to be equally admissible.

Finding no error in any of the appellant's exceptions, we affirm the judgment.

*Judgment affirmed.*

(Decided 16th June, 1876.)