WILLIAM A. CRAMER, W. PLUMMER BIRD AND
CLAUDIUS H. BIRD, CO-PARTNERS, TRADING AS
W. P. BIRD & BROTHER,

*vs.*

MICHAEL S. BAUGHER, RHODA V. BAUGHER, His
WIFE, AND JOHN JAMISON.

*Recoupment: unliquidated damages. Equity: affirmative relief
by defendant; when cross-bill necessary. Landlord and
tenant: liability for repairs; breach of
covenant: damages.*

Where a landlord allows a tenant to remain in possession
after the expiration of the term, the law presumes the holding
to be on the same terms as the original demise, subject to the
same rent and to all the original covenants.          p. 215

In such a case the fact that the rent had been changed by
agreement does not alter the rule, except in that particular. ˙
                                                     p. 215

Unless a landlord so binds himself, the tenant can not com-
pel him to repair.          .                        p. 215

But where a landlord has expressly covenanted to repair, the
obligation will be enforced; and if he sues for rent, the tenant
may recoup for any damage he has sustained through the land-
lord's breach of the agreement.·      .              p. 217

Under the Act of 1914, Chapter 393 (Code, Article 75, sec-
tions 12 and 13), in suits *ex contractu,* the plea of recoupment
may be availed of as against unliquidated, as well as against
liquidated, damages.                                 p. 217

Where the landlord covenants to repair, the tenant upon
breach is entitled to remuneration for all his expenditures of

time, labor or money in making the repairs, for loss of the use of the premises while being placed in the condition in which the landlord should have kept them, and for all direct damages resulting from the neglect of the landlord to make the repairs, which it was not in the power of the tenant easily to have avoided.                                        pp. 217-218

Where the landlord, in such a case, resorts to a court of equity to claim his rent, the tenant can not be allowed, by way of recoupment, any sum greater than the rent claimed, even though the sum for which he seeks recoupment includes sums laid out by him in making repairs which, under his covenant, the landlord should have made.                            p. 219

In equity, where a defendant seeks affirmative relief for anything beyond defense, he must file a cross-bill; without the aid of a cross-bill, a court of equity is not authorized to decree against a complainant the opposite of the relief which he seeks in his bill.                                        p. 219

*Decided February 14th, 1917.*

Appeal from the Circuit Court for Frederick County. In Equity. (WORTHINGTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James E. Tippett* (with whom were *George L. Mattingly* and *Charles C. Waters* on the brief), for the appellants.

*Arthur D. Willard* submitted a brief for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

William A. Cramer, on April 18th, 1913, alleging that he was a judgment creditor of Michael S. Baugher and Rhoda V. Baugher, his wife, and that the Sheriff of Frederick

County, by virtue of writs of *fi. fa.* issued upon said judgments, had levied upon the personal property of the defendants, but because of the inability of the Sheriff to transfer title to the property, under the executions, because of the lien created by a prior mortgage or a bill of sale, of the same property, filed his bill praying the Court to appoint a trustee to sell the property and apply the proceeds thereof to the payment of said judgments after first discharging and paying off the lien created by said mortgage or bill of sale. Although the docket entries show that a demurrer was filed to this bill no action apparently was taken in reference to it, and on July 29th, 1913, the Baughers filed an answer, and no further action was taken until March 9th, 1915, when the Court granted the prayer of a petition filed by W. Plummer Bird and Claudius H. Bird, co-partners, trading as W. P. Bird & Co., making them parties plaintiff "with the right to file such necessary papers in said cause as they may deem right and proper, looking to the protection of their rights as landlord of the defendants." On the same day Bird Bros. intervened by filing a petition in which they alleged that the Baughers were tenants of their farm and were indebted unto them for one year's cash rent, and prayed the Court to appoint a trustee to sell the personal property of the defendants and to have the proceeds distributed among the parties entitled according to their respective interests.

The Baughers filed an answer, which later was amended, by which they admitted the tenancy but denied that they were indebted for any rent by reason of the fact that the Birds had failed to carry out their covenant to repair and that thereby, through the untenantable condition of the premises, they had suffered damages largely in excess of the amount of rent to be paid for the premises if tenantable. Exceptions were filed to this answer, but the Court overruled them, and after hearing testimony, passed a decree disallowing the claim for rent and directing that the Birds pay to the Baughers the sum of $101.18, the amount expended by them for repairs. From that decree this appeal was taken.

The first question to be determined is whether the landlords were bound to repair; for unless a landlord so binds himself the tenant can not compel him to repair. *Taylor's Landlord and Tenant,* sec. 327. The testimony shows that under a written lease, signed by the Birds as landlords and the Baughers as tenants, the Baughers entered into possession of the farm for a term beginning May 1st, 1913, and ending March 31st, 1914, at a rental of $300.00, payable $27.27 monthly in advance. The lease contained a covenant that the landlords should do all necessary repairs. During January and February, 1914, negotiations were commenced between the landlords, or their authorized agents, and the tenants for a leasing of the premises for another year. It was agreed that the rent was to be raised to thirty-five dollars a month and a lease was prepared and executed by the landlords to that effect, and mailed to the tenants, who, finding upon examination that the clause as to repairs, contained in the original lease, had been omitted, and, in its stead, one inserted, requiring the tenants to make the repairs, returned the lease unsigned with a letter stating they would not accept the lease with that change. There was more correspondence in which the parties never came to terms as to that point, and the tenants continued, after the term had ended, in possession and recognized by the landlords as tenants. There was no effort upon the part of the landlords to avail themselves of the provisions of law to dispossess them of the premises, but they permitted them to occupy the property and recognized them as tenants, without having had any settlement of the question of repairs.

It seems so well established that it must be regarded as settled now, that where a tenant is allowed to remain in possession after the expiration of a term, with the consent of the landlord, the law presumes the holding to be on the terms of the original demise and subject to the same rent and to all the covenants of the original lease. *Vrooman* v. *McKaig,* 4 Md. 450; *Hall* v. *Myers,* 43 Md. 446; *Hobbs* v. *Batory,* 86 Md. 68; *Taylor's Landlord and Tenant,* sec. 58. The fact

in this case, that the rent had been changed by agreement would not alter the rule, except as to that particular. We must hold therefore, that the landlords were bound, under the holding over, by the covenant to repair contained in the original lease.

Before the end of the original term the property was visited by a severe wind storm, by which the buildings were greatly damaged, and some of them rendered untenantable; the barn, in particular, having had the roof almost destroyed. The landlords were immediately notified, and responded that they would shortly visit the farm. That sometime in May the agent did visit the property, and promised that the buildings would be put in shape by June, in time to store the summer crops. The tenants had a contractor look at the buildings and prepare an estimate as to the cost of repairs. He communicated this estimate to the agent, who replied a month later that he could make the repairs and take it out of the rent. The tenants testified that they did make some minor repairs, amounting to one hundred and one dollars and eighteen cents, but that they could not make any more, for they had not the money. The buildings were allowed to remain, by the landlords, practically in the same condition the storm had left them, and the property of the tenants was damaged greatly, as the direct result of the failure of the landlords to comply with the covenant to repair.

In discussing the question of whether or not one could plead set off or recoup against rent, *Taylor's Landlord and Tenant* has the following to say at section 374: "According to the strictness of the ancient law, a tenant could not in a suit for rent, set up in defense that the premises had become uninhabitable for any cause, or that the landlord had broken his covenant to repair; because the amount of damages sustained by the tenant being uncertain, could only be made the subject of a cross action, and was, therefore, incapable technically of being set off against the demand for rent, which is a certain fixed amount. But it may now be considered a well settled principle, that a defendant need not resort to a

cross action on the plaintiff's contract of indemnity in any case, but may set up his damages, by way of extinguishing or reducing the plaintiff's demand." And in section 331 the same author says: "When a landlord has expressly covenanted to repair the premises, the obligation will be enforced; and, if he sues for rent, the tenant may recoup any damages he has sustained, by the landlord's breach of the agreement."

Although the claim of the tenants is pleaded as for recoupment rather than as set off, it may be not amiss to call attention to the fact that the statutory law of this State as affecting the plea of set off to be filed in suits *ex contractu* and upon judgment, has been amended by the Act of 1914, Ch. 393, now codified as sections 12 and 13 of the Article 75, so as to allow the plea whether the claim is for liquidated or unliquidated damages. The case of *Westminster Metal Co.* v. *Coffman,* 123 Md. 619, was tried and decided before the Act of 1914, by its terms, went into effect, and, therefore, that decision followed the old law and decisions in effect at that time.

That a tenant has a cause of action against his landlord for damages directly caused by the failure to repair where the landlord has expressly agreed to repair and where the injuries could not easily have been avoided by the tenant, is the settled law of Maryland, however mixed the question may be in other jurisdictions. *Middlekauff* v. *Smith,* 1 Md. 329; *Abbott* v. *Gatch,* 13 Md. 334; *Cooke* v. *England,* 27 Md. 14; *Biggs* v. *McCurley,* 76 Md. 409. Quoting from the syllabus of *Middlekauff* v. *Smith, supra,* it was held that the rule for the measure of damages in a case of a breach of a covenant to repair was as follows: "Under a covenant to keep in repair, the tenant is entitled to remuneration for all expenditures of money, time and labor made in repairing; for loss of the use of the premises whilst being placed in the condition in which the landlord should have kept them, and for all direct damages resulting from the neglect of the lessor

to make repairs, and which it was not easily in the power of the tenant to have avoided."

The record shows that the tenants were possessed of a large equipment, such as was necessary for the successful operation of a large farm, consisting of horses, cattle and machinery, and the testimony is conclusive that all of his property was greatly injured by reason of the failure of the landlords to fulfill the covenant in the lease and especially of their failure to carry out the promise that everything would be made right by the month of June. Nor do we find that, because the tenant did not make the repairs himself, according to the agent's later direction, that fact should excuse the landlords, for it appears clearly that he had not sufficient funds to do so, and moreover, that fact was known to them. The injuries could not have been avoided by the tenant by placing his property elsewhere, for there seems to have been no other place he could have put it, and he had the right to depend, if not on their covenant to repair being kept, certainly upon the express promise to have the buildings in shape by the time of harvest. There are authorities holding that a tenant can not recover if he knowingly placed crops and other property where, by the very nature of things, they must be damaged, but they are distinguishable by the facts in this case, when it is taken into consideration that the tenant had been led to believe he would have a place for his crops when it was needed, and there was no other place available.

We do not think it necessary to review the testimony as to the amount of the damages, but, from our consideration of it, we agree with the lower Court, that the damage done was far in excess of the rent claim. And we are of opinion that the appellees were entitled to recoup this damage as against the rent.

As to that part of the decree whereby the appellants are to pay the appellees the sum of $101.18, the amount expended by them for minor repairs, we can not agree with the learned lower Court. As we have already said, the tenants were,

under the authorities, entitled to recoup their damages against the claim for rent, and it was upon the principle of recoupment, that the Court decreed that the appellees could not be allowed the amount of damages it found in excess of the amount of rent claimed, as clearly appears from the opinion filed. Yet the Court did, in fact, allow this claim for expenditures, notwithstanding its recognition of the principle of recoupment. It is a cardinal rule of equity pleading, subject to a few exceptions, which, however, are not present in this case, that where a defendant seeks affirmative relief for anything beyond defense, he must file a cross-bill. And without the aid of a cross-bill a Court of Equity is not authorized to decree against a complainant the opposite of the relief which he seeks by his bill. *Beach's Equity Pleading,* sec. 426. This claim was made in the answer, in precisely the same form and manner as the claim for damages were made, and we can not see how, under this state of the pleadings, these defendants were entitled to affirmative relief.

We will, therefore, affirm the decree in part and reverse it in part and remand the cause in order that a decree in conformity with this opinion may be entered by the Court below; but each party shall pay its own costs in this Court.

> *Decree affirmed in part and reversed in part and cause remanded for proceedings in accordance with this opinion, each party to pay its own costs in this Court, and the costs below to be paid by the appellants.*