(Decided June 29th, 1898.)

---

CAROLINE WIENECKE *vs.* WILLIAM G. ARBIN, ADMR.

*Competency of Witness—Assignment· of Life Insurance Policy by Married Woman—Insufficient Evidence of Assignment or Delivery.*

When the question is whether a married woman executed an assignment of a life insurance policy to a person since deceased, she is not a competent witness in a controversy between herself and the administrator of such decedent.

Plaintiff claimed the proceeds of a policy of insurance issued on the life of a husband for the benefit of his wife, under an

assignment alleged to have been made by the wife by making her mark. *Held,* that the evidence failed to establish that the wife had executed the assignment with knowledge of its contents or that she had delivered the policy to the plaintiff.

Appeal from a decree of the Circuit Court Number Two of Baltimore City (STOCKBRIDGE, J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BOYD and PEARCE, JJ.

*Thos. Ireland Elliott* (with whom was *Wm. E. Schloegel* on the brief), for the appellant.

*Albert S. J. Owens,* for the appellee.

FOWLER, J., delivered the opinion of the Court.

The New York Life Insurance Company on the 11th of April, 1874, issued its paid-up policy for the sum of $2,170, on the life of John Wienecke in favor of his wife, Caroline. The assured died on the 6th of February, 1897, and immediately thereafter the administrator of Henry Arbin filed with the insurance company a claim for $2,603.88, claiming to hold an assignment of said policy. The company refusing to pay the proceeds of the policy to the wife of the assured in whose favor it was made, she brought suit, and the company filed its bill of interpleader in Circuit Court No. 2, of Baltimore City, alleging that fact, and that the administrator of Arbin was also claiming the same fund, and asked that they might be required to interplead. A decree of interpleader was passed by which Caroline Wienecke was made plaintiff and the administrator of Henry Arbin was made defendant. They both answered, and without stating fully what the allegations of these answers are, we think it will be unnecessary, from the view we have taken of this case, to do more than say that the claim of the defendant is based altogether upon an alleged assignment of the policy in question purporting to be signed by the husband, which is fol-

lowed and written upon the same piece of paper, by an agreement to the effect that the policy should not "be given up until the above agreement be complied with." Much testimony was taken, a great deal of it relating to transactions which took place between the assured and Henry Arbin in the year 1874, but we need not enter into a consideration of the validity of the claim of the latter against the former; for it may be conceded for the sake of the argument that the claim as allowed by the Court below was a valid one as against the husband of the plaintiff, Caroline Wienecke. From the decree allowing the claim and sustaining the alleged assignment this appeal was taken, and the whole question is whether the assignment, under the facts of the case, is binding as against Caroline, who is the person named in the policy as the beneficiary. The paper on which the claim of the defendant is based is as follows:

"It is understood that in case of my (John Wienecke) death that all indebtedness due H. Arbin now and hereafter, shall be paid out of my Life Insurance policy No. 105,364 in the New York Life Insurance Company, after which being paid, the policy is to be delivered to my heirs."

(Signed)   John Wienecke."

"Witness: W. F. Kunkle."

"It is understood and agreed that the above policy No. 105,364 shall not be given up until the above agreement be complied with."

Her<br>"Caroline &times; Wienecke."<br>Mark

"Witness: W. F. Kunkle."

This assignment or understanding or agreement or whatever it may be called, together with the policy is alleged to have been in the hands of Henry Arbin or his administrator since the original transaction is alleged to have taken place in 1874. It appears, however, that in the year 1890 the insurance company upon the representation that the original policy had been lost or mislaid issued the following certificate:

" Certificate No. 32.

" This certifies that a paid-up policy of Insurance upon the life of John Wienecke of Baltimore City, Md., in favor of Caroline Wienecke his wife, No. 105,364, dated April 11, 1874, for $2,170, was issued by the N. Y. Life Insurance Company."

During all this time, from 1874 until the death of her husband in 1897, the dividends which were paid annually by the company were collected by Caroline. It does not appear that any claim was ever made by Arbin in his lifetime, nor by his administrator since the death of the former in 1877. The whole question presented by this appeal then is simply this, shall the property of the wife, without any consideration to her, be taken to pay her husband's debt? If so there should be clear and convincing proof that she executed the assignment, or rather by making her mark, gave her consent thereto, with full knowledge of its contents and of its legal effect. Have we any such proof before us? We have carefully considered all the evidence in the record, and are of opinion that it fails to sustain the validity of the assignment.

Recurring now to the assignment, a copy of which we have transcribed in the former part of this opinion, it is seen that the first part of the paper, that which is signed by the husband alone, describes the policy as *his,* and directs his debt to Arbin to be paid out of it. But, of course, the policy was not his, for it was payable to his wife. The paper is dated April 23rd, 1874, and is followed by the few lines, claimed to have been executed by the wife, by which it is contended she assigned the policy without any consideration whatever. Now it will be noticed that only one witness is produced to prove the execution of this paper. We will examine his testimony presently. Caroline was offered as a witness on her own behalf to prove that she never saw the paper, and did not sign it or make her mark to it. But her testimony was excluded by the learned judge below, and we think properly so. The contract or cause of action in issue here being the alleged assignment, and one

of the original parties thereto being dead, her testimony
was inadmissible under the express terms of the Code,
Art. 35, sec. 2. See also *Biggs* v. *McCurley*, 76 Md. 411.
In his testimony in chief the witness, Kunkle, said that
he had signed his name as witness to the signature of
John Wienecke and to the mark of Caroline. But when
asked if he saw them sign the paper, he replied, " Cer-
tainly, or I would not have put my name there." But
in his cross examination he was unable even to say that
both signed at the same time or place, and the inference
which may be drawn from his testimony is that they did
not so sign. This appears more fully from his attempted
explanation of the difference between his signature as
witness to the husband's signature and his signature as
witness to the wife's mark, and also from his testimony
in regard to the words " Caroline Wienecke, her mark."
None of the facts accompanying the alleged execution
by the wife are given—not even the place where she
made her mark, whether at her own home, at the home
of Mr. Arbin, her husband's creditor, or at the place of
business of the firm for which the witness was transact-
ing business. However, we have no doubt that this
witness was testifying to the best of his recollection.
It must be remembered he was speaking of a transaction
which took place nearly twenty-five years ago. The
serious difficulty in this case arises, therefore, not so
much as to defects in the testimony before us, as to the
entire absence of proof which we think it was necessary
to produce in order to sustain this assignment. In
addition to the defects already pointed out, there is no
proof whatever that the paper was read and explained
to her. She was not allowed to testify as to what took
place, whether the paper was or was not read to her,
and, as we have seen, the alleged assignee failed to fur-
nish this most important and necessary proof. Perhaps
if there had been no other testimony in the case to estab-
lish the execution of the assignment except that of the
subscribing witness, meagre and unsatisfactory as it is,
it might have been sufficient to make out a *prima facie*
case. But where the alleged assignor, Caroline proved

that she could not read, this fact, together with the unsatisfactory character of the evidence of the subscribing witness, raised a presumption against the validity of the assignment, which ought to have been rebutted by evidence that the paper was read to her and that she fully understood its legal effect.

But in addition to this, it will be observed that there is an entire absence of proof that Caroline personally or through any agent, or in any manner delivered the policy to Henry Arbin. In the case of *Pence* v. *Connecticut Life Ins. Co.,* 8 Ins. Law Jour. 146, the Supreme Court of Indiana held that " in order to prove an assignment the plaintiff must prove not only that she (the wife) signed her name to the assignment, but must also prove that she either delivered or authorized the delivery of the policy to the assignee." Certainly either the execution of the assignment or the delivery of the policy, even in a Court of Equity, should be held necessary. But here in the one case the proof is not sufficient, and in the other there is no proof at all. If, as may be inferred from the testimony of the witness, Kunkle, the first part of the paper signed by the husband and that signed by the wife were in fact executed on different days, it is possible that the paper signed by the husband alone, together with the policy, were delivered to the assignee without the knowledge or assent of the wife, and that her signature or mark was subsequently obtained. But whether this be so or not we cannot say, the burden of proof to establish the assignment was upon the assignee or his administrator claiming under it, and it has not been discharged to our satisfaction. Being unable to give our assent to the decree appealed from, it will be reversed.

*Decree reversed with costs to Caroline*
*Wienecke above and below.*

(Decided June 29th, 1898.)