RICHARD J. BIGGS *vs.* WALLACE McCURLEY, Administrator of FELIX McCURLEY.

*Sec. 2 of Art. 35 of the Code—Witness—Landlord and Tenant—What does not Constitute eviction—Breach of Covenant to Repair—Measure of Damages.*

Under section 2 of Article 35 of the Code, which provides that "when an original party to a contract or cause of action is dead, * * * or when an executor or administrator is a party to the suit or action or other proceeding, either party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer," in an action by the lessee against the administrator of the lessor to recover damages for a breach of the lease, the plaintiff is not competent to testify on his own offer, although the breach occurred after the death of the lessor,

The failure of the lessor to paint the house leased, to inclose the premises with a new fencing, and to make such other repairs as might be necessary, as stipulated in the lease, did not constitute such eviction as would entitle the lessee to recover in an action for the breach of the lease, for the expenses incurred by him in vacating the property and moving into another house.

Where a lessor covenants to make repairs and improvements upon the leased property and fails to do so, the lessee is entitled, in an action for the breach of the covenant, to recover the differ-

ence between the rent he agreed to pay and the fair rental value of the property without such repairs and improvements having been made; and also a proportion of the rent for the time he was deprived of the beneficial use of the premises, while waiting for the repairs and improvements to be made.

APPEAL from the Baltimore City Court.

The contract of renting between the plaintiff and the defendant's intestate, was executed on the 21st of January, 1891, the rent to begin on the 1st of February following. The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, ROBERTS, and McSHERRY, J.

*Henry O. Thompson,* and *William S. Bryan, Jr.,* for the appellant.

*Vernon Cook,* and *Edgar H. Gans,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The plaintiff leased of the defendant's intestate the dwelling house and premises Number 215 Old Frederick Road, for which he was to pay a rental of $225 a year. The property being in bad condition, the lessor agreed to make the following repairs: First, he was to enclose the premises with new fencing, was to run a neat picket fence from the roadway to Casey's fence, and to paint the dwelling house, and to make any other repairs which might be necessary.

· The lessor having failed in his life-time, and the defendant, his administrator, having refused to make the repairs and improvements thus agreed upon, this suit was brought by the lessee to recover damages for a breach of the lease. The plaintiff, having proved that he had over and over again requested the defendant to

make the repairs and improvements as thus stipulated in the lease, and had complained of the annoyance and discomfort which he himself and his family had suffered by reason of the failure to make such repairs, then offered himself as a witness to testify in regard to transactions which had occurred since the death of the lessor. And the first question is whether the plaintiff was, upon this offer, a competent witness? And this depends upon the construction of sec. 2, Art. 35 of the Code. After removing the disqualification of witnesses to testify on the ground of interest, and being parties themselves to the suit, the statute carefully guards the exercise of the right to testify by certain well defined limitations. And section 2 accordingly provides that "when an original party to a contract or cause of action is dead, or shown to be a lunatic or insane, or when an executor or administrator is a party to the suit, action, or other proceedings, either party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer, or upon the call of his co-plaintiff, or co-defendant, otherwise than now by law allowed, unless a nominal party merely." The object of this limitation is so apparent, and the language of the statute so plain and explicit, there ought not to be, it seems to us, any difficulty as to its construction. Where the parties to the contract or cause of action are living and sane, it is fair to presume that each has an equal knowledge in regard to the subject-matter in controversy; and this being so the parties themselves are made competent witnesses. But where one of the parties has died or become insane, it would be unfair and unjust to permit the other party to testify in his own behalf. The object of this limitation upon the privilege to testify was to put the parties to the contract or cause of action upon an equal footing. The test of competency, is the contract or cause of action in issue and

on trial, and not the facts in regard to which the party is called to testify, even though such facts may have occurred after the death of one of the parties to the contract. And if it be conceded that the lease in this case is the contract or cause of action in issue, then the lessor being dead, the lessee himself, it is clear, is not a competent witness. And, to escape this conclusion, it was argued that the breach, and not the lease itself was the cause of action within the meaning of the statute, and as the breach occurred after the death of the lessor, the plaintiff was a competent witness. Now, it may be true that in order to maintain the action, the plaintiff was bound to prove a breach of the lease by the lessor, but it is equally true that there could not be a breach or cause of action, unless there had been a contract between the parties. And though the cause of action may be said to embrace the lease and the breach, yet the lease, after all, is the contract on which the action is based. And, this being so, it is the contract, within the meaning of the statute, and the lessor, one of the parties to this contract, being dead, the lessee, the other party, is not, it is clear, a competent witness. So there is no error in the ruling of the Court in this exception. *Robertson, et al. vs. Mowell, et al.,* 66 *Md.,* 533; *Wright, Ex'r vs. Gilbert, Ex'x,* 51 *Md.,* 157; *Sangston, et al. vs. Hack and Wife, et al.,* 52 *Md.,* 201; *Orendorff, Adm'r vs. Utz,* 48 *Md.,* 304; *Dilley, et al. vs. Love, et al.,* 61 *Md.,* 607.

The plaintiff then proved that the house and premises were, generally speaking, in a bad and dilapidated condition; the house itself needed painting, both inside and out; the plastering was off in many places, especially around the windows and fire-places; the fencing between the yard and the lot, in the rear, and between the yard and barn-yard, was in a rickety and rotten condition, and in some places had fallen down; and that for the

want of proper enclosures around the premises, the plaintiff was deprived of the use of the stable, and obliged to keep his horse at livery. He further proved that he was deprived of the use of the property for more than three months, waiting for the repairs and improvements to be made, and was then obliged to move into the dwelling house without anything having been done to it or to the premises; that he continued to occupy it till the 17th of October following, when finding all efforts to induce the defendant to make the repairs mentioned in the lease were unavailing, he vacated the property. He then proved, subject to exception, that he himself and his clerk, spent a good deal of time during a period of two months looking for a house at a moderate rent, suitable for his family, and was obliged at last to take one at an increased rental of $105.00 per annum, and that the expenses incurred and paid by him in vacating the property and moving into another house amounted to $175.00. The plaintiff having closed his case, the evidence thus admitted subject to exception in regard to the costs and expenses incurred by him in vacating the property, was on motion of the defendant excluded from the jury. There cannot be, it seems to us, any error in the ruling of the Court in this respect. The action here is for a breach of the contract of renting by the lessor. It was no part of his contract to furnish the plaintiff with another house, nor did he agree to pay the costs or expenses that might be incurred in moving into another house. There is no ground on which his liability for such expenses can be maintained, unless the plaintiff was deprived of the beneficial use of the property by some act or acts of the lessor or the defendant, which in law amounted to either *actual* or *constructive* eviction. And it can hardly be necessary to say that the failure to make the repairs stipulated in the lease would not in itself amount to constructive eviction.

We come then to the only question about which it seems to us there can be any real contention in this case. The defendant having declined to offer any evidence, the Court instructed the jury that, "under the pleadings in this case, there is no evidence legally sufficient to show that the plaintiff has sustained any actual damages from the alleged breach of the covenants relied on in support of the action; and the jury, even if they believe there was such breach, can only give a verdict for nominal damages."

Under this instruction the jury found a verdict for the plaintiff for *one cent damages,* and one cent being below the jurisdiction of the Court, a judgment of *non pros.* was entered, thereby subjecting the plaintiff to the payment of the costs of suit.

Now, we cannot agree with the Court, that there is no evidence legally sufficient to show that the plaintiff sustained any actual damage from the breach of contract on the part of the lessor. The property was rented by him as a home for himself and his family. It was, when the lease was signed, in a dilapidated and bad condition; the house needed painting inside and out; the plastering was off in many places; and the fencing enclosing the premises was rickety and rotten, and was in some places actually down. The lessor agreed to put it in complete repair, to paint the house, and put up new fencing, part of which was to be neat picket fence. The proof shows that neither the lessor in his life-time, nor the defendant since his death, has ever made any of the repairs and improvements thus agreed upon in the lease. In addition to this, the lessee was deprived of the use of the property for some time waiting for these repairs to be made, and was actually deprived of the use of the stable for the want of proper fencing around the premises, and was obliged to keep his horse at livery. In the face of such facts as these, we cannot agree that the plaintiff is

entitled to recover merely nominal damages.    One is
entitled to nominal damages for the mere violation or
infraction of his rights, even though he may not have
suffered any loss or damage.    But here was not only a
violation of the plaintiff's rights, a breach of contract by
the lessor not denied, but proof of actual pecuniary loss
sustained by him in consequence of such breach.    And,
if in such a case the plaintiff can recover only nominal
damages, then the lease imposed no other obligation or
duty on the part of the lessor which could be lawfully
enforced.    We say "lawfully enforced," for it is not rea-
sonable to suppose the lessee would incur the expense
and annoyance of a law-suit merely to recover *one cent
damages*, and to be subject thereby to the payment of
the *entire costs of the litigation.*    The question then is, by
what rule are the damages to be ascertained?    Now, it
may not be easy, we admit, to lay down a general rule
in regard to damages for a breach of contract on the part
of the lessor to make repairs, which would be applicable
to all cases.    If the repairs are of a trifling character, re-
quiring but a small outlay of money, it has been said in
some cases, that the lessee himself ought to make such
repairs, and claim an allowance for the money expended
by him out of the rent.    But then that is not this case.
Here the dwelling house was to be painted inside and
out—the fencing to be repaired, and part of it to be newly
built, and in addition to these, all other necessary re-
pairs to be made.    It may not have been convenient for
the lessee to advance the money necessary to meet such
expenses.    But whether convenient or not, he was under
no obligation, legal or otherwise, to do that which the
lessor himself had agreed to do.    The lessee was to pay
a rental of $225 for the dwelling house and premises,
which were to be repaired and improved in the mode and
manner stipulated in the lease; and if the lessor neglected
or refused to make such repairs and improvements, then

the plaintiff was entitled to recover at least the difference between the rent he thus agreed to pay, and the fair rental value of the property without such repairs and improvements having been made. In other words, he was entitled to recover the diminished rental value of the property by reason of the failure to make the repairs according to the terms of the lease.

Then, again, there is proof to show that the lessee was kept out of the use of the property for more than a month, waiting for these repairs to be made; and if this be so, he was also entitled to recover as damages a proportion of the rent for the time he was thus deprived of the beneficial use of the premises. And in addition to these, there is proof to show that he was deprived of the use of the stable for the want of proper fencing enclosing the property, and was obliged to keep his horse at livery. And if so, he was entitled to recover such damages as the jury might find that he had thereby sustained.

Being of opinion, then, that there was error in the instruction granted by the Court, the judgment will be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 2nd December, 1892.)