CHARLES E. BURT, INC. *vs.* SEVEN GRAND CORPORATION.

Hampden. September 23, 1959. — December 16, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Eviction, Services furnished by landlord, Construction of lease. *Equity Jurisdiction,* Declaratory relief, Eviction. *Election.* *Damages,* For breach of lease.

An inexcusable and substantial failure, by a lessor of space on an upper floor of a business building in a city, to provide the lessee with light, heat, power, and elevator service as required by the lease was such a material breach of the lease as would constitute a constructive eviction upon the lessee's abandonment of the demised premises. [127]

An ambiguous lease prescribed by the lessor was to be construed more strongly against him. [127]

In a certain lease requiring the lessor to furnish specified services essential to the lessee, a provision that no interruption of such services should "be deemed a constructive eviction" was construed as applying only to excusable failures to furnish them. [128]

In a bill in equity by a lessee against the lessor alleging failure by the defendant to provide essential services as required by the lease, a

prayer seeking that the lease be "rescinded and declared a nullity" might properly be treated as an election by the plaintiff to abandon the demised premises for constructive eviction if his contentions should be sustained. [128]

In equity, a lessee, if he had not abandoned the demised premises upon a failure of the lessor to provide essential services as required by the lease, might secure a declaration that such failure would constitute a constructive eviction upon abandonment by the lessee and that the lessee thereupon would be excused from further performance of the lease. [129–130]

Upon a failure of a lessor of space in an upper floor of a business building to provide the lessee with essential light, power, heat, and elevator service as required by the lease, amounting to a constructive eviction upon abandonment of the demised premises by the lessee, the measure of damages for such failure over a period in the past was the difference between the value of what the lessee should have received, which could reasonably be found to be reflected by the rent, and the value of what the lessee actually received, as to which expense to the lessee in procuring electric current, the amount of damage to the lessee's machines from cold, loss of profits through suspension of the lessee's operations, and the amount of damage sustained by the lessee from loss of elevator service were relevant. [130–131]

In a suit in equity by a lessee against the lessor seeking relief on the basis that a failure of the lessor to provide certain essential services as required by the lease constituted a constructive eviction, and seeking damages, if it should appear that the lessee had not abandoned the demised premises within a reasonable time after filing the bill, proper adjustments in computing damages should be made by crediting the lessor with the fair value of the lessee's occupation of the premises after the filing of the bill and, if the lessee paid any rent thereafter, by allowing the lessee recovery of the excess of that rent over the fair value of such use and occupation. [131]

BILL IN EQUITY, filed in the Superior Court on May 22, 1958.

The defendant appealed from a final decree entered by *Smith*, J., after hearing on a master's report.

*Robert Pierce*, for the defendant.

*J. Clifford Clarkson*, for the plaintiff.

CUTTER, J. This is a bill in equity filed on May 22, 1958, by the lessee (Burt) of space on the fifth floor of a building in Springfield (a) to enjoin the defendant (Seven Grand) from collecting rents under the lease, (b) to have the lease "rescinded and declared a nullity," and (c) to obtain damages for the failure of Seven Grand to perform the terms of

the lease. The case was referred to a master who proceeded ex parte when the defendant failed to appear at the hearings.

The following facts were found by the master or established by the pleadings. On July 1, 1955, Burt executed a lease[1] of the space for five years ending June 30, 1960, at a rent of $4,500 per year. Subsequent to the execution of the lease, Seven Grand became assignee of the lessor's interest in the lease. Beginning on October 18, 1957, monthly payments of rent were made by Burt to Seven Grand. Thereafter, beginning in November, 1957, Seven Grand failed to furnish (a) electric power and current without giving to Burt the three months' notice called for by art. 27 of the lease, (b) sufficient heat, and (c) elevator service. "[S]uch failure was not due to unavoidable causes which would excuse it." As a consequence, Burt was obliged to provide otherwise for current and elevator service, and Burt's printing machines sustained $250 damage from cold. Burt had to operate certain diesel engines at a cost of $300, and to provide current by other means at a cost of $1,000. Burt also lost printing profits of $400 because of necessary suspension of operations and sustained damage of $85 from loss of elevator service. Burt's total damage was $2,035, a little less than six months' rent.

The master refused to reopen the hearings to hear objections and testimony in behalf of Seven Grand. A motion to

---

[1] Relevant portions of the lease read: "25th. This lease and the obligation of Tenant to . . . perform all of the . . . covenants and agreements hereunder . . . shall in nowise be . . . excused because Landlord is unable to supply or is delayed in supplying any service . . . to be supplied . . . if Landlord is prevented or delayed from so doing . . . for any reason not within the control of the Landlord. 26th. . . . In respect to the various 'services' . . . to be furnished by the Landlord . . . it is agreed that there shall be no . . . abatement of the rent . . . for interruption . . . of such 'service' when such interruption . . . shall be due to accident, alterations or repairs desirable . . . to be made or to . . . some other cause, not gross negligence on the part of the Landlord. *No such interruption . . . of any such 'service' shall be deemed a constructive eviction* . . . [emphasis supplied]. 27th. Landlord may furnish electric current for light and power . . . but no claim shall be made against the Landlord on account of the failure to supply electric current if such failure shall be due to unavoidable causes. Landlord may cease supplying such electric current on three months notice to Tenant. . . . 29th. The Landlord shall furnish heat at all reasonable hours during the heating season . . . . 32nd. In conjunction with other tenants . . . freight elevator service shall be furnished by Landlord" (at hours specified which need not be listed).

recommit the report was denied and the report was confirmed. A final decree (a) provided "that the lease . . . be . . . rescinded as of . . . May 22, 1958," the day when the bill was filed, and (b) ordered payment by Seven Grand to Burt of $2,035 with costs. Seven Grand appealed.

1. Where tenants lease space on an upper floor of an urban building, as here, to conduct business enterprises, it is unrealistic to say that furnishing light, heat (in our climate), power, and elevator service does not go to the essence of what the landlord is to provide, to substantially the same extent as the term for years in the space itself. Failure to furnish such services, at least if serious in extent and not excusable, deprives the lessee of a vital part of what the landlord knows the lessee must have in order to carry on his business. Such a failure constitutes a breach of the covenant of quiet enjoyment (see *H. W. Robinson Carpet Co.* v. *Fletcher*, 315 Mass. 350, 353; annotation 41 A. L. R. 2d 1414, 1423, 1439) and "enables the lessee to recover the damages caused to him thereby and also provides the lessee with the defense of 'constructive eviction' (if he removes from the premises)." See Powell, Real Property, § 227, p. 203; § 231, pp. 224–225; and also § 247. The doctrine of constructive eviction has been applied often. See *Shindler* v. *Milden*, 282 Mass. 32, 33–35; *Westland Housing Corp.* v. *Scott*, 312 Mass. 375, 381, 383; and cases collected in *Stone* v. *Sullivan*, 300 Mass. 450, 455; Corbin, Contracts, § 686, esp. at pp. 699–703; Williston, Contracts (Rev. ed.) §§ 890–892; Am. Law of Property, §§ 3.11, 3.51–3.52. Cf. Tiffany, Real Property (3d ed.) §§ 141–146.

The terms of this lease will be construed, so far as the language permits, to produce an equitable agreement between the parties. See *New England Foundation Co. Inc.* v. *Commonwealth*, 327 Mass. 587, 596. Here we infer, from the use of a New York law blank publisher's form by the original lessors who were inhabitants of New York, that the lease was prescribed by the landlord. To the extent that it may be ambiguous, we construe it more strongly against the landlord. See *Watts* v. *Bruce*, 245 Mass. 531, 534; *Standard*

*Sanitary Mfg. Co.* v. *Hartfield Realty Co.* 284 Mass. 540, 546.
See also *Schaffer* v. *Hotel & R.R. News Co.* 266 Mass. 276,
277; *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314
Mass. 142, 149. *LaCouture* v. *Renaud,* 325 Mass. 33, 37.
We find nothing in arts. 25 and 26, or in the master's sub-
sidiary findings, which indicates error in the master's con-
clusion that Seven Grand's failure to provide services was
not excusable. The provision (art. 26, italicized words,
footnote 1, *supra*) that no "such interruption . . . of any
. . . 'service' shall be deemed a constructive eviction" is
sufficiently ambiguous to lead us to interpret it as applying
only to excusable failures. The services to be rendered by
the landlord were of such a vital character that it would be
inconsistent with the general purpose of the lease to interpret
the sentence as providing that inexcusable failure of the
services under no circumstances could amount to a con-
structive eviction.[2] Seven Grand's failure to provide essen-
tial services caused Burt in the period November, 1957, to
May, 1958, to suffer damages nearly equal to the rent for
the period. Such failure was a material breach of the lease
and could be taken by Burt by abandoning the premises as
a constructive eviction.

2. In seeking what it refers to as rescission and that the
lease be "declared a nullity" Burt asked little more (see
Corbin, Contracts, § 1223, p. 921) than declaratory relief as
to its rights. Its prayer, however, that the lease be re-
scinded, even if it has not abandoned the premises, can
reasonably be construed as an election, if its contentions in
fact should be sustained, to abandon because of a construc-
tive eviction.

At law the tenant's abandonment of the leased premises
must take place within a reasonable time (see *Rome* v.
*Johnson,* 274 Mass. 444, 450–451; cf. *Palumbo* v. *Olympia*

[2] We need not decide whether any other interpretation of the provision
would make it so unconscionable as to require disregarding it as against public
policy. See analogy of *Quality Fin. Co.* v. *Hurley,* 337 Mass. 150, 153–155;
Restatement 2d: Trusts, § 222 (2), comment b; Scott, Trusts (2d ed.) § 222.3;
Restatement: Contracts, §§ 573–575; Corbin, Contracts, §§ 1472, 1526–1527;
Prosser, Torts (2d ed.) § 55, pp. 305–307. Cf. *New England Trust Co.* v.
*Paine,* 317 Mass. 542, 550.

*Theatres, Inc.* 276 Mass. 84, 88) after the acts alleged to constitute constructive eviction (see *A. W. Banister Co. v. P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 426–427), but "abandonment of the [leased] premises is not essential to seeking equitable relief." See Williston, Contracts (Rev. ed.) § 892, p. 2529. See also *Epstein* v. *Dunbar*, 221 Mass. 579, 584; *Winchester* v. *O'Brien*, 266 Mass. 33, 37–38. In the case of material breaches of a lease by a lessor, where the injury is sufficiently serious, equitable relief by way of injunction or specific performance may be granted. See *Jones* v. *Parker*, 163 Mass. 564, 567–569; *Ferguson* v. *Jackson*, 180 Mass. 557, 558; *New York Cent. R.R.* v. *Stoneman*, 233 Mass. 258, 263; *S. C.* 236 Mass. 81; *Sanford* v. *Boston Edison Co.* 316 Mass. 631, 634–635; Hall, Landlord and Tenant (Adams and Wadsworth's 4th ed.) §§ 252–265. See analogy of *Scioscia* v. *Iovieno*, 318 Mass. 601, 603. We perceive no reason why equitable relief, in appropriate circumstances, should not be given by way of (1) a declaration under G. L. c. 231A that the wrongful acts of the lessor justify treating those acts as a constructive eviction, (2) appropriate consequential relief, and (3) assessment of damages. Although equitable relief was denied in *Barry* v. *Frankini*, 287 Mass. 196, 201, there (see pp. 199–200) the lessor's breach of covenant to pay taxes was "not of such a material . . . nature as to excuse the party suing from proceeding with the contract." That case, however, did not decide that equitable relief must be denied where breach of covenant constituting failure of consideration "goes to the essence" of the contract. See *De Angelis* v. *Palladino*, 318 Mass. 251, 257. See also *Case* v. *Minot*, 158 Mass. 577, 584–585. Cf. *Callahan* v. *Goldman*, 216 Mass. 238, 239. Such relief is more nearly adequate than the incomplete and hazardous remedy at law which requires that the lessee (a) determine at its peril that the circumstances amount to a constructive eviction, and (b) vacate the demised premises, possibly at some expense, while remaining subject to the risk that a court may decide that the lessor's breaches do

not go to the essence of the lessor's obligation. The trial judge could properly (1) declare that Seven Grand's material breach of the lease constituted, or would constitute, a constructive eviction upon Burt's abandonment of the premises, and that Burt, upon such abandonment, was or would be excused from further performance of the lease and (2) assess damages.

The present record does not reveal whether abandonment of the premises has taken place and, if it has, when that occurred. The bill may imply that Burt's possession of the premises continued at least through the date of the bill. In view of the absence of findings about abandonment, the decree of unconditional rescission must be modified, after appropriate findings as to abandonment, to declare either (a) that Burt has been constructively evicted, if abandonment has in fact taken place, or (b) that Burt is entitled to abandon the premises within a reasonable time and to treat Seven Grand's conduct as a constructive eviction.

3. No issue of future damage (cf. *Gromelski* v. *Bruno,* 336 Mass. 678, 681) to Burt by reason of its constructive eviction has been argued. The only damages found are those for Seven Grand's past actions. The appropriate measure of damage thus is the difference between the value of what Burt should have received and the fair value of what it has in fact received. See *Grennan* v. *Murray-Miller Co.* 244 Mass. 336, 339; *Daniels* v. *Cohen,* 249 Mass. 362, 364; *Parker* v. *Levin,* 285 Mass. 125, 128; Corbin, Contracts, §§ 1105, 1108, 1114, 1115; McCormick, Damages, § 142, p. 586; Williston, Contracts (Rev. ed.) §§ 1404, 1455, et seq. See also *Riley* v. *Hale,* 158 Mass. 240, 246; *Plumer* v. *Houghton & Dutton Co.* 281 Mass. 173, 175–176; *Bloom, South & Gurney, Inc.* v. *Mitchell,* 289 Mass. 376, 378; *Kurland* v. *Massachusetts Amusement Corp.* 307 Mass. 131, 142; *A & S Prod. Corp.* v. *Parker,* 334 Mass. 189, 192; Am. Law of Property, §§ 3.51–3.52.

The provisions of the lease are established by the pleadings. Upon the lease and the master's subsidiary findings, the trial judge could reasonably conclude (a) that the rent

reflected the benefit of what Seven Grand received from Burt during the period of Seven Grand's defaults and also the fair value of what Burt should have received if Seven Grand had performed its obligations fully, and (b) that the value of what Burt in fact received was less than the rent by at least the amount which Burt was obliged to expend for services not furnished by Seven Grand, viz. the aggregate amount ($1,300) spent by Burt for use of diesel engines to produce electric current and for current from other sources. Nothing in the record suggests that incurring these expenses was unreasonable. See *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 427–428.

The master could reasonably conclude that the damage to Burt's machinery from cold, the loss of profits during suspension of operations, and the damage resulting from Seven Grand's failure to operate the elevator, reduced the value of what Burt in fact received from Seven Grand. See *Parker* v. *Levin*, 285 Mass. 125, 128. There is no showing that his ultimate conclusion upon the amount of damage was not justified by his subsidiary findings.

Because of the absence of findings about the date of abandonment one further uncertainty must be mentioned. If Burt did not abandon the premises within a reasonable time after the date of the bill, when Burt indicated its election to treat Seven Grand's defaults as a constructive eviction, Seven Grand is entitled to a further credit of the fair value, if any, of Burt's occupation of the premises after the date of the bill. If Burt paid any rent after the date of the bill, Burt is entitled to a further recovery of the amount by which that rent exceeded the fair value of its use and occupation during the period after May 22, 1958. Burt must give Seven Grand full credit for the benefits, if any, received by Burt after the date of the bill, for relief of this character should "be granted [only] upon such equitable conditions as . . . [will] amply protect the rights of the defendant." See *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 266.

4. The interlocutory decree confirming the master's report is affirmed. Solely to permit resolution of the uncertainty

caused by absence of findings on the issue of abandonment, the final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*