278 So.2d 584 (1973)
FRIENDLY FINANCE, INC.
v.
CEFALU REALTY INVESTMENT, INC.
No. 9346.
Court of Appeal of Louisiana, First Circuit.
May 14, 1973.
Rehearing Denied June 20, 1973.
Writ Refused August 29, 1973.
Sam J. D'Amico, D'Amico, Curet & Bush, Baton Rouge, for appellant.
Warren Mengis, Mengis, Durant & Carpenter, Baton Rouge, for appellee.
*585 Before LANDRY, TUCKER and PICKETT, JJ.
TUCKER, Judge.
The plaintiff, Friendly Finance, Inc., brings this declaratory judgment proceeding in which it seeks an order terminating and cancelling a lease, originally executed on May 11, 1962, and extended by way of options to October 31, 1973, with the defendant, Cefalu Realty Investment, Inc., as the lessor and plaintiff as the lessee, such termination to be effective February 1, 1971. Briefly the property leased is described as Lot Two (2), Square Fifty-seven (57) or Five (5) Grass Town, and the North one-half (N½) of Lot One (1), Square Fifty-seven (57) or Five (5), Grass Town. The action is grounded on the proposition that the parking lot, located on the secondly described property included in the lease and extensions to plaintiff, was leased subsequently on February 1, 1971 in derogation of plaintiff lessee's contractual rights, to R. W. Investment Company and/or Charles Plumb, a concern engaged in publicly presenting films of questionable content and character in a building owned by the defendant but located on property not covered by the lease to the plaintiff. The plaintiff addressed a letter by certified mail (Exhibit P-3) to the defendant on February 4, 1971, protesting the use of the parking lot by the personnel and customers of the Imperial Art Theater, and R. W. Investment Company enterprise, and demanding that the use of the parking lot by such persons be stopped by the defendant immediately. The record reflects that the parking lot had been black-topped by the plaintiff before 1962, and the cost of this improvement was borne in equal proportions by Friendly and Cefalu. Plaintiff earnestly contends that the second leasing of the parking lot by defendant to R. W. Investment Company, while its own lease was in full force and effect, violated seriously and substantially its right to be maintained in peaceful and uninterrupted possession of the entire premises, and on April 19, 1971 plaintiff wrote a letter to defendant to the effect that it considered the lease cancelled for the "flagrant breach of the lease", effective February 1, 1971. The trial court rendered and signed a judgment on April 12, 1972 holding that the lease was terminated on April 17, 1971. From this judgment defendant perfected this appeal.
We are in full accord with the decision of the trial court, and it is eminently correct.
On appeal appellant asserts the following errors in the judgment of the trial court:
"1. The trial court erred as a matter of law in concluding that Cefalu Realty Investment Inc. breached its legal obligation to cause its lessee to remain in peaceable possession of the leased premises.
2. The trial court erred as a matter of law in concluding that the unintentional inclusion of the parking lot in the lease to R. W. Investment Company and/or Charles Plumb was such a disturbance as to entitled Friendly Finance to cancel the lease.
3. The trial court erred in failing to award attorney's fees to the Cefalu Realty Investment, Inc."
The issues raised by appellant and the positions derived therefrom are clearly without merit or substance. The record patently reflects that appellant, in executing the second and subsequent lease to R. W. Investment Company, covering the parking lot then under lease to plaintiff, flagrantly violated its obligations under the lease contract. The only reservation contained in the lease which impinged on the absolute dominion of the plaintiff over the parking lot area was the right of lessor-appellant to park his personal car occasionally on the lot without charge therefor. It is claimed by appellant that an addendum to the R. W. Investment *586 Company lease, executed on February 19, 1971, in which the parking lot was removed and eliminated from that lease had the effect of returning to plaintiff its control over the parking lot, and thereby corrected the objections raised by plaintiff. An examination of this document (Exhibit P-4) shows that Charles Plumb (R. W. Investment Co.) retained the right for him and his customers to enter and leave the building which he had leased from defendant across the subject parking lot. This qualified deletion of the parking lot from the R. W. lease, but with the retention of the right to enter and exit across the parking lot, still presented a substantial violation in derogation of plaintiff's dominion over the parking lot.
We are not impressed with defendant's argument that the inclusion of the parking lot in the R. W. Investment Company lease was due to honest error and mistake on the part of Cefalu, and no disturbances have been occasioned to the plaintiff in its peaceful occupancy of the parking lot premises, other than a few trespassers, against whose inroads appellant could not guarantee. To say that the inclusion of the parking lot in the second lease was void ab initio, and, therefore, in a contest between Friendly and R. W. over the parking lot, Friendly was bound to prevail, completely begs the question. Here the lessor obviously and seemingly deliberately breached its duty to afford the tenant peaceful possession of the premises. Appellee concedes that appellant cannot guarantee it against the disturbances caused by trespassers or other persons not claiming any right to the premises, and the responsibility rests with a lessee to protect himself against the depredations of trespassers. It is further conceded that such an infraction of a lease in order to justify its cancellation must be substantial, serious and continuous in nature.
Defendant on the one hand contends that he did not breach the lease, and, if he did, such infraction was of small moment and did not warrant a cancellation of the lease. On the other hand Cefalu says that Friendly, when it vacated the premises, did not remove therefrom items which it owned, including counters, fixtures, air conditioning, heating units and ducts, and half partitions. Failure to remove such items and the retention by plaintiff of the key to the building is asserted as indicative of the recognition on the part of Friendly that the lease was still effective and in force. A cursory examination of the lease clearly shows that the plaintiff was reserved the right under the lease to remove these items at termination of the engagement, but the lease imposes no duty on Friendly to do so. Although not of any measurable concern, the plaintiff has fully and satisfactorily explained its conduct in retaining the key and its continuing to pay the rent.
In the case of McWilliams v. Harper, 177 La. 728, 149 So. 437 (1933) where the owner-lessor had dedicated a portion of the leased premises for the construction of a road without obtaining the consent of the lessee, the court held that the provisions of C.C.Art. 2703 were not applicable insofar as the lessor not being bound to guarantee the leasee against disturbances caused by persons not claiming any right to the premises, and further held that the lessor was not in the position of a third person in whatever wrong was done to plaintiff. The defendant-lessor was held to have made an actionable breach of his contract with plaintiff by executing the dedication. In Tate v. Fakouri, 118 So.2d 464 (La.App. 1st Cir. 1960) we held that the lessor interfered with the lessee's possession by renting the property to another during the term of the lease and permitted the recovery of damages by the first lessee.
The jurisprudence appears settled that the leasing of a substantial portion of the demised premises to another amounts to a constructive eviction. The record abounds with evidence clearly establishing *587 that the parking lot was a substantial part of the leased premises here. The appellant can take no comfort in its position that the plaintiff has not alleged a claim for damages, and, therefore, it is reasonable to infer that the violation of the lease, if any occurred, was not sufficient in magnitude to have caused the plaintiff damages, as none were claimed. The plaintiff has proceeded here by declaratory judgment procedure to determine if there has been in fact a breach of the lease by the lessor.
The provisions of LSA-C.C. Art. 2692 and that portion of the judgment in the case of Brunies v. Police Jury of Parish of Jefferson, 237 La. 227, 110 So.2d 732 (1959) interpreting said article are inapposite to the facts here. The law is clear that a necessary temporary or insignificant disturbance is not grounds for the abrogation of a lease. The record is replete with testimony that almost simultaneously with the execution of the second lease, and continuing after the confection of the addendum, the plaintiff experienced a continuous series of problems and difficulties with the personnel and customers of the Imperial Art Theater insofar as the use of the parking lot was concerned. The plaintiff has established convincingly that the parking lot facilities constituted an integral and substantial part of the leased premises, and that providing free parking spaces for its customers was of extreme importance to its business in a highly competitive field. We, therefore, agree with the trial court and hold that the breach of the lease by appellant was substantial in nature and entitles plaintiff to a cancellation and termination of same effective April 19, 1971.
Such other issues as may have been raised by the parties litigant need not be considered, as a discussion of same would serve no useful purpose.
The judgment of the trial court is affirmed at appellant's costs.
Affirmed.