Merrimack
No. 79-426

## Frank Thompson
### and
## Capitol Sign Co., Inc.

v.

## Russell L. Poirier and Sandra A. Poirier

September 10, 1980

*Gallagher, Callahan & Gartrell,* of Concord (*Edward E. Shumaker, III,* orally), for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*James C. Wheat* orally), for the defendants.

DOUGLAS, J. This case raises questions whether the defendants constructively evicted the plaintiff from certain leased business premises, whether the corporate plaintiff is a proper party to the action, and whether the court below acted properly in awarding the plaintiff moving expenses, lost profits and attorney fees.

Frank Thompson and Russell Poirier owned and operated separate sign-painting and manufacturing businesses in the Hooksett area. In December 1973 the two agreed that Mr. Poirier, who owned Whitey's Signs, would construct on his business premises a building suitable to house Mr. Thompson's business, Capitol Sign Co., and that Mr. Thompson would lease it. The parties apparently believed that the two sign businesses were sufficiently different that they would not compete with one another.

The new building was completed in April 1974. Capitol Sign Co.

moved in pursuant to an eight-year lease by which the plaintiff obligated himself to pay eight years worth of rent over five years. Two and one-half years passed without incident; the plaintiff paid the accelerated rent and the parties interacted peaceably and exchanged work with one another. In April 1976, Mr. Thompson incorporated and changed his business name to Capitol Sign Co., Inc.

In September 1976, relations between the parties began to deteriorate. The record shows that over the next several months, Mr. Poirier harassed the plaintiff in an effort to induce him to vacate the leased premises. His activities included shutting off the plaintiff's electricity during business hours; verbally abusing the plaintiff, his employees, customers and subcontractors; taking pictures of certain customers and purposely piling snow on the leased premises.

In February 1977, Mr. Poirier caused a notice to quit to be served on his tenant. The plaintiff, in his own name and in the name of his incorporated business, filed a bill in equity praying for injunctive relief and for money damages including $9,500 in lost profits. A temporary injunction issued requiring the Poiriers to "cease and desist from any interference with the conduct of the plaintiff's business upon the leased premises and from the establishment or continuance of business relations with others." On August 11, 1977, Mr. Thompson vacated the leased premises. A month later he amended his bill in equity to allege that Mr. Poirier, by continuing his campaign of harassment, "constructively and/or actually evicted the plaintiff from the premises." He amended his prayer to include $17,000 in moving expenses, lost prepaid rent and attorney fees. After a trial, the Master (*Robert A. Carignan,* Esq.) found that the defendant "constructively evicted" the plaintiff and recommended an award to the plaintiff of $8,566.77 on the original bill and $14,251.18 on the amended bill for a total of $22,817.95. *Souter,* J., approved the recommendation and *DiClerico,* J., reserved and transferred the defendants' exceptions.

 The defendants' first argument is that the corporate plaintiff may not maintain an action alleging that the Poiriers breached the lease because the corporate plaintiff was not a party to the lease. We reject this argument. As we have said repeatedly, this court will not disturb a trial court's finding of fact as long as there is evidence in the record to support it. In this case Mr. Thompson testified that prior to signing the lease, he told the defendant that he intended to incorporate. Mr. Poirier denied

having any such conversation, but there was evidence that in October 1976, he received a letter from Mr. Thompson's attorney requesting lessor approval of certain signs advertising Capitol Sign's new corporate status, which Mr. Thompson hoped to display on the leased premises. Further, Mr. Poirier did not then object to the incorporation, and as late as July 1977, he accepted a rent payment check that bore plaintiff's corporate name. These facts suggest that he had reason to anticipate the incorporation. The weighing of conflicting evidence is for the trier of fact. There was ample evidence on which the master could reasonably find that the incorporation "was anticipated by all of the parties." The evidence supporting this finding, together with all the relevant circumstances in this case, lead us to the conclusion that the parties, at the time they signed the lease, contemplated the prospective corporate entity as a party. *See Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 776, 329 A.2d 144, 147 (1974). In view of our resolution of this issue, we do not address the defendants' argument that the corporation is not a proper assignee or sublessee and is therefore without standing to sue.

A primary basis for the plaintiff's award was the master's finding that the defendants' harassment and the plaintiff's subsequent departure amounted to constructive eviction. The defendants point to evidence that Mr. Thompson investigated the possibility of relocating some eight months before he finally quit the premises and to his failure to leave promptly after the harassment began. They argue that the elements of constructive eviction are not present in this case. This argument is without merit.

Mr. Thompson's search for a possible relocation site does not militate against his case unless the search began before the defendants' harassment. *See* 52 C.J.S. *Landlord & Tenant* § 457 (1968). There was no evidence that it did. Nor does the plaintiff's failure to leave promptly after the incidents began help the defendants in this instance. It is well established that a lessee who claims constructive eviction must abandon the premises within a reasonable time after his reason to do so arises. *Id.* Whether the lessee vacated within a reasonable time depends on the facts of the particular case. *See id.; cf. Maki v. Nikula*, 224 Or. 180, 355 P.2d 770 (1960); *Westland Housing Corp. v. Scott*, 312 Mass. 375, 44 N.E.2d 959 (1942). The master found, on sufficient evidence, that certain of the plaintiff's customers discontinued business with the plaintiff as a result of the defendants' actions and resumed them when the plaintiff relocated. Such interference with business

relations substantially deprived the tenant of the business use of the premises and was sufficient cause to support a finding of constructive eviction as long as it continued. *See Friendly Finance, Inc. v. Cefalu Realty Invest., Inc.,* 278 So. 2d 584 (La. App. 1973); 2 R. POWELL, REAL PROPERTY ¶ 225[3] (1977). We uphold the finding that the plaintiff vacated the premises within a reasonable time.

■ ■ The defendants also contend that the court erred in awarding damages for moving expenses. The plaintiff introduced evidence of expenses normally associated with moving a business. The Poiriers argue that these were normal expenses that the plaintiffs would have incurred at the end of their lease and that they should be precluded from recovering any moving expenses not in excess of the norm. As the defendants' brief points out, this rule prevails in some jurisdictions. *See, e.g., Buck v. Mueller,* 221 Or. 271, 351 P.2d 61 (1960) and cases cited. Other courts, however, have held that reasonable moving expenses are recoverable. *See, e.g., Iverson v. Marine Bancorporation,* 86 Wash. 2d 562, 546 P.2d 454 (1976); *Radinsky v. Weaver,* 170 Colo. 169, 460 P.2d 218 (1969). We think this is the better result. There is no reason to presume conclusively that moving expenses paid as an immediate result of a wrongful eviction would be paid, years later, at the end of the lease term. *Wade v. Herndl,* 127 Wis. 544, 107 N.W. 4 (1906). Indeed, in the present case there is good reason to suppose that they would not. Mr. Thompson, a man of sixty at the beginning of the tenancy, planned to retire at the end of the lease. It is unlikely that he would have relocated. We hold that the award for moving expenses was proper.

■ The Poiriers also attack the court's award of lost business profits. The plaintiff's method of proving lost profits consisted of determining gross sales for the period of harassment, subtracting it from gross sales for a comparable prior period, and deducting from the remainder the cost of doing business. This was a reasonably certain method of proof. *See Van Hooijdonk v. Langley,* 111 N.H. 32, 34, 274 A.2d 798, 799-800 (1971). As the defendants point out, however, the plaintiff's gross sales figure for the period of harassment was actually $3,453.39 *greater* than it was for the prior comparable period. To remedy this problem, the plaintiffs deducted from gross sales for the harassment period $13,646 in income attributable to two large jobs performed during the period. When asked why the proceeds from these jobs were not included in gross sales income for the period, Mr. Thompson explained that

the jobs were "not indicative of the type of business that [Capitol Sign] had been doing during that period." He explained further that they were large jobs, done away from the shop. The defendants contend that Mr. Thompson's explanation afforded no reasonable basis to support the master's allowance of the deduction of ordinary income which, if included, would destroy the plaintiff's claim for lost profits. We agree. Mr. Thompson's business was signmaking. The proceeds from all signs made and sold during the period in question should have been included in gross sales for that period, regardless of the size of the job or where it was done. The award of $3,397.55 is therefore vacated. RSA 490:14.

 Finally, the defendants charge that the award of attorney fees was improper. The rule in effect in this State is that when

> "an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate."

*Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977). The plaintiff had a right to the peaceful use of the leased premises. The master found on sufficient evidence that Mr. Poirier interfered with this use through "relentless and never ending" harassment, and that he "constantly told the plaintiff to move and that he would make the plaintiff Thompson's life unbearable until he did so." These findings support the conclusion that Mr. Poirier acted in bad faith. We hold that the award of attorney fees was proper.

*Affirmed in part; reversed in part;*
*remanded for entry of judgment in*
*accordance with this opinion.*

All concurred.