# MITCHELL STEVAN ET AL. *v.* SIDNEY J. BROWN ET AL.

[No. 758, September Term, 1982.]

*Decided April 8, 1983.*

The cause was argued before LOWE, WEANT and ADKINS, JJ.

*Wallace Dann,* with whom was *David M. Layton* on the brief, for appellants.

*Sandy David Baron,* with whom was *Leonard R. Goldstein, Chartered* on the brief, for appellees.

ADKINS, J., delivered the opinion of the Court.

The principal question presented in this case is whether tenants who claim constructive eviction but have notified their landlords that, on account of their landlords' conduct, they intend not to take advantage of their lease's renewal term, may sue the landlords for damages arising from loss of

the renewal term. Since our answer is "it depends", we hold that the Superior Court of Baltimore City erred in granting summary judgment for the landlords. We also hold that the trial court erred in granting summary judgment on but one issue raised in an action for declaratory and other relief, without making a full declaration of the rights and status of the parties. The factual framework of the controversy is as follows:

In 1963, appellants, members of a law firm (tenants) leased a suite of offices in Baltimore from which to conduct their law practice. Apparently they found these premises to their liking, since they executed a new lease of the same suite on July 31, 1973. This 1973 lease, which is involved in the instant case, was for a five-year term from November 1, 1973. In paragraph 27, it provided for an automatic five year renewal term from November 1, 1978, to October 31, 1983, "unless the Tenant shall give the Landlord notice in writing of its intention not to renew the lease on or before April 30, 1978, and no later." The appellees (landlords) became successors in interest to the original landlord.[1]

All did not go well under the 1973 lease. In April 1977, tenants sued the individual landlords in the Superior Court of Baltimore City, adding the corporate landlord by subsequent amendment. Tenants complained of janitor service that was "erratic and, at its best, poor"; inadequate cleaning of men's and women's toilets; accumulation of bird droppings; "near manic" elevator service; lack of heat; lack of hot water; and other deficiencies in services they claimed landlords were bound to supply, presumably under paragraph 11 of the lease and under the covenant of quiet enjoyment contained in paragraph 28. In their suit, tenants sought a declaratory judgment holding that the lease had been substantially breached by landlords and, therefore, that the lease was terminated. Tenants also asked to be

---

1. The appellees in this case are Sidney J. and Sarah Brown and his or their wholly-owned corporation, Tower Building Corp. There was some dispute below as to the actual identity of the landlord(s). That question was not decided below, and we do not decide it. Md. Rule 1085.

allowed to remain in the premises for six months or until they could locate new quarters, and they requested both punitive and compensatory damages, including in the latter damages caused by loss of their five year renewal option.[2]

On April 4, 1978, tenants wrote landlords:

> Because of the wrongful conduct of [landlords] as set forth [in the pending suit], the Tenant is compelled to and does hereby give notice to the Landlord, pursuant to paragraph 27 of the lease dated July 30, 1973, between the Landlord and the Tenant for the occupancy of the premises . . . of the Tenant's intention not to renew the term of the said lease for an additional five years commencing on November 1, 1978.

In October 1978, at the end of the original term of the lease, tenants moved to a new location.

The landlords filed the second of their two motions for summary judgment on March 1, 1982. They claimed that they were entitled to prevail on the issue of liability for the loss (or relinquishment) of the option to renew. On April 19, 1982, the Superior Court of Baltimore City granted landlords' motion, and entered judgment absolute for costs in favor of the landlords in the entire case. The trial judge explained:

> The issue raised by [landlords'] motion for summary judgment is that [tenants] having declined the renewal term are not entitled to damages based on the difference between the rental value of the property during the renewal term and the rent provided for in the lease . . . . The [tenants] have taken an inconsistent position. Albeit I understand

---

2. The Superior Court of Baltimore City granted partial summary judgment for landlords on the punitive damages claim. Since the correctness of that ruling has not been briefed by tenants on appeal, we do not address it. Md. Rule 1031 c.2., Federal Land Bank of Baltimore v. Esham, 43 Md. App. 446, 406 A.2d 928 (1979); Jacober v. High Hill Realty, Inc., 22 Md. App. 115, 321 A.2d 838, cert. den., 272 Md. 743 (1974).

they maintained they were forced to remain in the premises during the original term, even though they had ground for constructive evictions because they feared suit by the landlord. Albeit they maintained that they declined the renewal under protest. It is inescapable that their conduct in declining the renewal term and seeking damages based on the renewal term are fatally inconsistent. . . .

The [tenants] had the right, if they are correct in their position, to leave the premises before the termination of the original term. If they are correct, they had the right to leave the premises without declining the renewal term. And had they done so, they could have litigated the issue of the constructive eviction. But they did neither. They did not vacate the premises prior to the end of the original term and they . . . voluntarily made the decision to decline the renewal term. It was not a decision made under duress. It was a voluntary decision. They argued they had no alternative. But, that is inaccurate. The clear alternative, and that which they were required to do is to leave the premises without declining the renewal term.

This decision was erroneous. It was erroneous because, *inter alia,* the trial judge, on a motion for summary judgment, made factual determinations or drew inferences which might have been appropriate for a fact finder at trial, but which were not proper on a motion for summary judgment. *Barb v. Wallace,* 45 Md. App. 271, 275, 412 A.2d 1314, 1316 (1980). As we pointed out in *Delia v. Berkey,* 41 Md. App. 47, 51, 395 A.2d 1189, 1192 (1978), *aff'd.* 287 Md. 302, 413 A.2d 170 (1980):

The Court of Appeals on numerous occasions has stated that the function of the summary judgment procedure is not to try the case or decide the issues of fact raised; it is merely to determine whether

> there is an issue of fact to be tried, and if there is none, to cause judgment to be issued accordingly. [citations omitted].
>
> In ruling on a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and even if it is found unlikely that the party opposing the motion will prevail at trial, this is insufficient to authorize a summary judgment. [citations omitted].

Why it was incorrect to grant landlords' motion for summary judgment becomes apparent when one reviews the legal theories underlying tenants' case.

### Constructive Eviction

Tenants' fundamental position is that they were constructively evicted by landlords. A constructive eviction occurs when the acts of a landlord cause serious or substantial interference with the tenants' enjoyment of the property which results in the tenant vacating the premises. A. Rhynhart, "Notes on the Law of Landlord and Tenant", 20 *Md. L.R.* 1, 23-24 (1960). These acts must be done by the landlord with the intent and effect of depriving the tenant of the latter's use and enjoyment. *McNally v. Moser,* 210 Md. 127, 122 A.2d 555 (1956). But the requisite intent may be inferred from the nature and impact of the acts.

Thus, failures to furnish heat, elevator service, and necessary electricity have been held adequate to support a claim of constructive eviction, *Chas. E. Burt, Inc. v. Seven Grand Corp.,* 340 Mass. 124, 163 N.E.2d 4 (1959); as have the failure to furnish sanitary restroom facilities (along with other problems), *Thirteenth and Washington Sts. Corp. v. Nelson,* 123 Utah 70, 254 P.2d 847 (1953); and frequent flooding of the premises because of the landlord's fault, *Reste Realty Corp. v. Cooper,* 53 N.J. 444, 251 A.2d 268 (1969).

Of course, every instance of nonperformance by a landlord does not necessarily support constructive eviction in fact or in law, *Biggs v. McCurley,* 76 Md. 409, 25 A. 466 (1892);

*Schaaf v. Nortman,* 19 Wis.2d 540, 120 N.W.2d 654 (1963). Moreover, a tenant who claims constructive eviction may waive his rights if he waits an unreasonable length of time before vacating the premises. *McNally v. Moser, Reste v. Cooper, Burt v. Seven Grand,* and *Thirteenth and Washington v. Nelson,* all *supra; Thompson v. Poirier,* 120 N.H. 584, 420 A.2d 297 (1980). But a tenant generally may not claim constructive eviction until such time as he actually vacates the premises. *Chicago v. American Nat'l Bank,* 86 Ill. App.3d 960, 408 N.E.2d 379 (1980). Also *Burt v. Seven Grand Corp.; Thirteenth and Washington Sts. Corp. v. Nelson,* both *supra.*

When these principles are applied in the instant case, an unusual situation presents itself. The appellants admit that their abandonment of the premises "for all practical purposes . . . was coincident with the [end of the] term of the lease. . . ." While it has been held that "abandonment of the leased premises is not essential to seeking equitable relief," *Burt v. Seven Grand Corp., supra,* 340 Mass. at 129, 163 N.E.2d at 7, (citation omitted), appellants sought relief in an action at law. Therefore, constructive eviction offers no opportunity for relief regarding their term of rental under the 1973 lease. But they are not necessarily precluded from asserting constructive eviction regarding their option to renew, since they did abandon the leased premises before they would have occupied under that option. Among the relevant considerations in resolving this issue is the reasonableness of their delay in abandonment, which is usually a question of fact, not law. *Giddings v. Williams,* 336 Ill. 482, 486, 168 N.E. 514, 516 (1929).

But in the present posture of this case, we, like the trial judge ruling on the motion for summary judgment, need not, indeed cannot, decide whether the deficiencies charged by tenants were of sufficient seriousness, frequency, and duration to amount to constructive eviction. And we neither need nor can decide whether tenants waived their constructive eviction rights by remaining in the premises too long. No trial was held and no evidence was introduced

as to these matters. Suffice to say that "the pleadings, depositions, and . . . affidavits" filed in the case showed genuine disputes of material facts as to these issues. Md. Rule 610. Thus, the merit of tenants' constructive eviction claim could not properly have been disposed of on summary judgment.

*Right of Constructively-Evicted to Claim Damages for Loss of Renewal Term*

We have established that there were triable issues as to constructive eviction. Tenants next argue that if, at trial, they should succeed on this point, then they can recover damages for the five year renewal term of the lease that they lost when they were constructively evicted. We think this argument is legally sound, if their inability to enjoy the benefit of the renewal is established to be the result of the constructive eviction. The concept is simply that if landlords breached the lease, they cannot rely on their own wrongful act to escape liability under a lease provision the performance of which they have prevented by that wrongful act.

Constructive eviction is most commonly raised as a defense to a landlord's action for rent. *See Reste Realty Corp. v. Cooper; Thirteenth and Washington Sts. Corp. v. Nelson,* both *supra.* But constructive eviction may provide a litigant with a sword, as well as a shield. In *Thompson v. Poirier, supra,* the Supreme Court of New Hampshire upheld an award to a plaintiff, whose action was based on constructive eviction, of moving expenses, lost profits [3] and attorney fees. In *Burt v. Seven Grand Corp., supra,* the Supreme Judicial Court of Massachusetts ruled that a plaintiff could recover past damages for constructive eviction, and implied that future damages could also be recoverable, if the plaintiff were to raise properly the issue. In *Weighley v. Muller,* 51 Pa. Super. Ct. 125, 132 (1912), it was held that

---

[3]. Although the particular formula by which lost profits was calculated was rejected.

> If the tenant was evicted by the landlord or by acts equivalent to an eviction was deprived of his pecuniary interest under the lease, he was entitled to recover as damages the loss suffered by him — to be put in the same position pecuniarily as he would have been if the contract had been kept — when the damages are the natural result of such breach of contract and can be ascertained with reasonable certainty.

Persuasive analogy of constructive eviction to other types of wrongful conduct on the part of landlords strengthens the tenants' claim in this case. In *Nelson v. Reisner,* 51 Cal.2d 161, 331 P.2d 17 (1958), a tenant had the right of first refusal of the renewal of his lease. The landlords submitted a first refusal proposal which contained exorbitant terms and which the trial court found was not in good faith. The tenant rejected it. The Supreme Court of California held that the tenant had not waived the right of first refusal by rejecting the landlord's bad faith offer. It observed that if a party to a contract prevents its performance by the adverse party, the errant party cannot rely on the nonperformance to escape liability.

*Fullington v. M. Penn Phillips Co.,* 238 Or. 321, 395 P.2d 124 (1964) was a case in which the tenant had a three-year lease with an option to purchase the property, which option could be exercised at any time during the term of the lease. During the term, the landlord repudiated the lease and required the tenant to vacate. The tenant sued for the value of the lost option without ever having attempted to exercise that option. The trial court found for the landlord on the ground that since the tenant had not exercised the option, there was no breach of contract, and hence no damages.

The Supreme Court of Oregon reversed. It recognized that the tenant might never have exercised the option, but concluded that since the landlord had, by its wrongful action, created that element of speculation, the landlord could not complain. We think that reasoning would be applicable here, if, at trial, it is found that tenants were constructively

evicted and did not waive their rights by failing to leave the premises within a reasonable time.

We note that in *Fullington* the Oregon court supported its holding by analogy to cases in which an optionee is entitled to recover the value of his option when property is taken by eminent domain prior to the exercise of the option; *see, e.g., Canterbury Realty Co. v. Ives,* 153 Conn. 377, 216 A.2d 426 (1966) and *Hercey v. Board of Chosen Freeholders,* 99 N.J.Eq. 525, 133 A. 872 (1926). This rule has been adopted in Maryland, *Sholom, Inc. v. State Roads Commission,* 246 Md. 688, 229 A.2d 576 (1967). We, too, find the analogy persuasive.

In *Sholom,* it is true, the parties agreed that but for the condemnation, Sholom would have exercised the options to renew its lease or purchase the property. In the case at bar, landlords cite *Hoffman v. Monaco,* 330 Ill. App. 98, 69 N.E.2d 718 (1946) for the proposition, *inter alia,* that when there is no evidence that a tenant intended to exercise his right to renew a lease, he cannot, despite constructive eviction, recover damages for the value of the lost renewal. Whether or not an intention to renew is essential in such cases, we need not now decide. We note only that in appellant Stevan's affidavit in opposition to landlords' motion for summary judgment, he alleged that tenants' intention was to take advantage of the renewal term and remain in the property until October 1983, had it not been for the allegedly wrongful conduct of the landlords. Whether there was, in fact, such an intention (if such an intention is necessary, *see Fullington)* is a question to be determined by the trier of fact at trial.

*Election by Tenants to Reject Renewal Term*

Another relevant consideration is the legal effect of the notice given by tenants to the landlords in April, 1978. Tenants claim that their intent in giving such notice was merely to avoid an additional matter of litigation between themselves and the landlords, while the landlords claim that the notice relieved them of any obligations on the renewal

option. In *Weighley v. Muller, supra,* the tenant notified his landlord of his intent to quit the premises as a result of the landlord's allegedly wrongful conduct, and then sued the landlord for damages. Although the landlord argued that that notice relieved him of any liability under the lease, the court held that "[t]here is nothing in the notice to indicate that the tenant was waiving any right founded on the facts as he claimed them to be. It was a superfluous act, and did not mislead the landlord or weaken or strengthen the case of the tenant." *Id.* at 132.

Of course, if tenants voluntarily elected to reject the renewal term, it was their own action, and not wrongful action by landlords that deprived them of the benefit of that term. That is what landlords claim occurred by virtue of tenants' letter of April 4, 1978, and that was the basis for the granting of landlords' second motion for summary judgment.

*Aldrich v. Olson,* 12 Wash. App. 665, 531 P.2d 825 (1975) was a case in which Olson leased a residence from Aldrich, with an option to purchase. Following nonperformance of certain lease provisions by Olson, Aldrich unlawfully (and actually) evicted Olson from the property. Thereafter, Olson wrote Aldrich advising that he considered both the lease and the option to purchase terminated. The Washington intermediate appellate court held, *inter alia,* that Olson could not recover for the value of his option, because he had voluntarily terminated it. A somewhat similar result was reached in *Hoffman v. Monaco, supra,* in which the court held that abandonment of the premises negatived an intent to exercise a lease renewal option.

The critical finding in *Aldrich* was that Olson had *voluntarily* terminated his right to exercise the option. That finding was made after a full trial on the merits, a circumstance which also had occurred in *Hoffman.* It is that which makes those cases inapposite to the instant case.

Here, there was no trial, and no opportunity for a finder of fact to consider evidence and to determine the intent of tenants' letter of April 4, 1978, in light of all the circumstances. Those circumstances would include the

pendency of the declaratory judgment action and its allegation of wrongful conduct, and the wording of the letter itself. The letter recited that "[b]ecause of the wrongful conduct of [landlords], as set forth in the suit . . . the Tenant is *compelled* to . . . give notice . . . of the Tenant's intention not to renew the term of said lease . . . [emphasis supplied]."

In his affidavit in opposition to the motions for summary judgment, appellant Stevan said that this notice was not unconditionally and freely given, but was "expressly predicated" in landlords' wrongful conduct. In his deposition Stevan also said that the decision not to take the renewal term "was not a decision we made voluntarily."

Tenants' position is essentially this: In 1977, they concluded that landlords' acts or omissions supported a claim of constructive eviction. At that point, they could have taken several courses of action, one of which would have been to vacate the premises, if other quarters could have been found. *Restatement, Property* (2d) (1977) "Landlord and Tenant" § 10.1. Had they done so, they would have subjected themselves to an action by the landlords for rent. If the landlords had prevailed in such an action, by establishing that there had not been a constructive eviction, tenants would have been liable for rent for the remainder of the term of the lease, and for the renewal term if tenants had not disclaimed that by the date specified in the lease. As the Supreme Court of New Jersey pointed out in *Reste, supra,* 53 N.J. at 461, 251 A.2d at 277

> Vacation of the premises is a drastic course and must be taken at his [the tenant's] peril. If he vacates, and it is held at a later time in a suit for rent for the unexpired term that the landlord's cause of action did not reach the dimensions of constructive eviction, a substantial liability may be imposed upon him.

Instead of taking this hazardous approach, tenants sought a judicial declaration of their rights, and requested damages that might be appropriate if their legal theory prevailed. *See*

*Burt v. Seven Grand Corp., supra.* They were entitled to do so despite the existence of possible alternative remedies. Courts and Judicial Proceedings Art. § 3-409(c). *Also see Schultz v. Kaplan,* 189 Md. 402, 409-10, 56 A.2d 17, 20 (1947).

In light of all these circumstances, there were conflicting inferences as to whether the April 1978 letter was a voluntary decision to abandon the renewal. In other words, there was a question as to whether that letter should have estopped tenants from claiming the landlords liable on that option to renew. Estoppel is a question of fact, to be determined in each case. *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 389 A.2d 887 (1978). Any such determination should have been made only after a full trial. Accordingly, the trial judge erred in granting the motion for summary judgment. *DiGrazia v. County Executive,* 288 Md. 437, 418 A.2d 1191 (1980); *Barb v. Wallace; Delia v. Berkey,* both *supra.*

*Other Matters*

Another issue raised by the tenants' declaration, but not expressly addressed by the judgment below, is the possible liability of the landlords for a breach of their covenant of quiet enjoyment, expressly provided for in paragraph 28 of the lease, and implied as a matter of law. *Baugher v. Wilkins,* 16 Md. 35 (1860). Even if the problems with the Tower Building complained of by tenants are found not to support a claim of constructive eviction, they may constitute a breach of the covenant of quiet enjoyment. In *Burt v. Seven Grand Corp., supra,* the Massachusetts court stated:

> Where tenants lease space on an upper floor of an urban building, as here, to conduct business enterprises, it is unrealistic to say that furnishing light, heat (in our climate), power, and elevator service does not go to the essence of what the landlord is to provide, to substantially the same extent as the term for yours in the space itself. Failure to furnish such services, at least if serious

> in extent and not excusable, deprives the lessee of a vital part of what the landlord knows the lessee must have in order to carry on his business. Such a failure constitutes a breach of the covenant of quiet enjoyment . . . and "enables the lessee to recover the damages caused to him thereby. . . ." *Id.* at 127, 163 N.E.2d at 6. (citations omitted.)

We adopt the Massachusetts Court's view on this matter. If the acts or omissions of the landlords in this case are found to have been so serious as to amount to a deprivation of "the essence of what the landlord is to provide", *id.,* then the landlord will be liable to the tenant for "the difference between the value of what [a tenant] should have received and the fair value of what it has in fact received," *id.* at 130, 163 N.E.2d at 8.

The appellants also argue that the court below erred in failing to provide them with a written declaration of the rights, status and relations of the parties.

> [I]f there is a justiciable issue presented by the bill of complaint or declaration seeking declaratory relief under the Act, a declaration should be given even if it is not the declaration sought by the plaintiff and, indeed, is entirely or partially contrary to the theory of the plaintiff on which declaratory relief is sought. *Woodland Beach Ass'n. v. Worley,* 253 Md. 442, 448, 252 A.2d 827, 830 (1969). *Also see Shapiro v. Bd. of County Comm'rs. for Prince George's County,* 219 Md. 298, 149 A.2d 396 (1959).

Examples of non-justiciable issues provided in *Woodland* arise where a statute expressly precludes such relief, or where "the lack of a justiciable issue clearly appeared on the face of the bill of complaint or declaration." *Id.* at 448, 252 A.2d at 830. No such situation presents itself in the case at bar. Therefore, it was error for the court to have not given a declaration. As to the necessity that such a declaration take written form, we rely on *Griffin v. Anne Arundel*

*County,* 25 Md. App. 115, 136, 333 A.2d 612, 625 (1975) and *Urbana Civic Ass'n. v. Frederick County,* 23 Md. App. 49, 56, 325 A.2d 755, 759 (1974).

Landlords argue that tenants are not able, in any event to recover damages because of defects in answers to interrogatories and because they "failed to produce evidence" on this subject. As to the first argument, this is a matter to be determined at trial. As to the second, landlords mistake the nature of summary judgment proceedings. Tenants were not required to produce evidence sufficient to establish their entire case. All they had to do was show the existence of genuine disputes of material facts. This they did.

Landlords also argue that this case is moot because pending the suit the lease terminated. This argument is not persuasive. There is still "an actual controversy . . . between contending parties" regarding liability for damages, Courts and Judicial Proceedings Art. § 3-409 (a) (1) which can be terminated by a judgment, § 3-403 (b). *See McNally v. Moser, supra.*

> *Judgment vacated.*
> *Case remanded for further proceedings not inconsistent with this opinion.*
> *Appellees to pay the costs.*